**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X

JANKI BAI SAHU, <u>et al</u>.,      :

         Plaintiff,   :     04 Civ. 8825 (JFK)

   -against-     :    **OPINION AND ORDER**

                :

UNION CARBIDE CORP. and   :

WARREN ANDERSON,         :

        Defendants.   :

------------------------------X

<u>APPEARANCES</u>:

      For Plaintiffs Janki Bai Sahu, <u>et al</u>.:

          Richard S. Lewis, Esq.
          1100 New York Ave., NW
          Suite 500 West
          Washington, DC 20005

          H. Rajan Sharma, Esq.
          36 Ravenwood Court
          Edison, NJ 08820

          Curtis V. Trinko, Esq.
          16 West 46th St., Seventh Floor
          New York, NY 10036

          Richard Herz, Esq.
          EarthRights International
          1612 K Street, NW Suite 401
          Washington, DC 20006

      For Defendants Union Carbide Corp. and Warren Anderson:

          William A. Krohley, Esq.
          William C. Heck, Esq.
          Kelley Drye & Warren, LLP
          101 Park Avenue
          New York, NY 10178

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

<u>Preliminary Statement</u>

Before this Court are Defendants' motion to dismiss and/or for summary judgment, and Plaintiffs' application for a stay pending additional discovery pursuant to Fed.R.Civ.P. 56(f). For the reasons discussed below, Defendants' motion is granted in part. All of Plaintiffs' claims, with one exception, are dismissed; the one exception being that the Court will stay, in accordance with Plaintiffs' request, a decision regarding whether the Court can pierce the corporate veil of a company in which Defendant corporation previously owned stock. Before the Court rules on this remaining claim,[1] Plaintiffs, pursuant to Rule 56(f), are granted additional time for discovery related solely to corporate veil piercing.

<u>Background</u>

Plaintiffs in this case seek recovery for injuries they allege were sustained by pollution from the Union Carbide India Limited ("UCIL") plant in Bhopal, India. The UCIL plant began

---

[1] The Court recognizes that "piercing the corporate veil . . . is not, in and of itself, an independent cause of action but a procedural device through which a plaintiff may assert facts and circumstances to persuade the court to impose" a subsidiary's obligation on the parent. <u>Securities Investor Protection Corp. v. Stratton Oakmont, Inc.</u>, 234 B.R. 293, 321 (Bankr. S.D.N.Y. 1999). For the sake of clarity, the Court will refer to it as a claim throughout this decision.

operations as a pesticide formulations plant in the mid-1960s, on land leased from the Indian State of Madhya Pradesh. (Compl. ¶ 70.) UCIL was incorporated under Indian law in 1934. 50.9% of UCIL's stock was owned by Defendant corporation, Union Carbide ("UCC") (Compl. ¶ 63), making UCIL a subsidiary of UCC (Compl. ¶ 62).

The UCIL plant was back-integrated in 1979-1980 to manufacture pesticides. (Compl. ¶ 70.) During the manufacture of pesticides, hazardous wastes were generated and dumped within the plant's premises. After a gas leak in 1984, the plant was closed by the Indian government and never resumed normal operations. (Compl. 94.)[2] Thereafter, all activity at the plant site was monitored closely by the Indian Central Bureau of Investigation, the Indian courts, and the Madhya Pradesh Pollution Control Board.

In 1994, Union Carbide sold all of its remaining UCIL shares (Compl. ¶ 117), and UCIL has since changed its name to "Eveready Industries India Limited" ("EIIL") (Compl. ¶ 117). In 1998, EIIL terminated its lease upon consent from the state government of Madhya Pradesh. (Compl. ¶ 124.)

---

[2]Pollution arising out of the gas leak is not the subject of this litigation. The current litigation concerns pollution from the normal operations of the UCIL plant. Pollution arising out of the gas leak itself was already litigated in In re Union Carbide Corp.Gas Plant Disaster at Bhopal, India in December, 1984, 634 F.Supp. 842 (S.D.N.Y. 1986), aff'd as modified, 809 F.2d 195 (2d Cir. 1987), cert. denied, 484 U.S. 871 (1987).

Plaintiffs filed a Class Action Complaint on November 8, 2004, alleging environmental pollution in and around the former UCIL plant in Bhopal, India. (Compl. ¶ 1.)[3] Plaintiffs claim that contamination of the soil and drinking water supply of sixteen communities in the vicinity of the former UCIL plant caused injury to the communities' residents. (Compl. ¶ 1.) Plaintiffs seek to hold Defendants – UCC and its former Chief Executive Officer, Warren Anderson – liable for these injuries on three grounds. First, Plaintiffs allege that UCC "was a direct participant and joint tortfeasor in the activities that resulted in the environmental pollution." (Compl. ¶ 60.) Second, Plaintiffs allege that UCC "worked in concert with UCIL to cause, exacerbate and/or conceal the pollution problem in Bhopal." (Compl. ¶ 60.) Third, Plaintiffs claim Defendants are liable on the ground that UCIL acted as Union Carbide Corporation's alter ego, justifying the piercing of UCIL's corporate veil. (Compl. ¶ 60.) Plaintiffs seek relief under New York common law for negligence, public

---

[3]Plaintiffs were originally members of a putative class in Bano v. Union Carbide Corp., No 99 Civ. 11329, 2003 WL 1344884 (S.D.N.Y. Mar. 18, 2003). This Court dismissed the Bano plaintiffs' personal injury claims as untimely because they were discovered more than three years before the action was commenced. The present suit is comprised of plaintiffs whose personal injury claims are not time-barred as they were discovered within the three-year statute of limitations period. (Compl. ¶¶ 4-47.)

nuisance, private nuisance, strict liability, medical monitoring, battery, and injunctive relief.

## The Present Motions

Defendants move for summary judgment pursuant to Fed.R.Civ.P 56 and/or dismissal pursuant to Fed.R.Civ.P 12(b)(6). Defendants argue that neither UCC nor Mr. Anderson was a direct participant or joint tortfeasor because the decisions that resulted in the environmental pollution were the decisions of UCIL. Defendants also argue that there is no evidence to support Plaintiffs' allegation that Defendants worked in concert with UCIL to cause, conceal, or exacerbate the pollution problem at the UCIL site. As to Plaintiffs' contention that UCIL acted as UCC's alter ego, Defendants argue Plaintiffs cannot meet an essential requirement for a piercing of the corporate veil – specifically, the need to prevent fraud or achieve justice – because EIIL is a "financially viable corporation, fully capable of responding to plaintiffs' claims . . ." (Mem. in Supp. of Pls.' Mot. for Summ. J. 2.) Finally, Defendants contend that injunctive relief, whether in the form of remediation or medical monitoring, is infeasible, citing the related case, <u>Bano v. Union Carbide Corp.</u>, 2003 WL 1344884, in which this Court denied injunctive relief. For all these reasons, Defendants urge, Plaintiffs' claims should be dismissed.

Plaintiffs object and apply for a stay on the motion so that they may conduct additional discovery on the veil piercing issue, pursuant to Rule 56(f).

Defendants' Motion to Dismiss and/or for Summary Judgment is granted on all claims but one; Plaintiffs' veil piercing claim. Plaintiffs are granted sixty days for additional discovery regarding veil piercing before the Court will render a decision on that issue. All other claims are dismissed.

## Discussion

Before addressing the merits of the instant motions, the Court notes that it could dismiss all of Plaintiffs' claims based on _forum non conveniens_. In _In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984_, 634 F.Supp. 842 (S.D.N.Y. 1986), _aff'd as modified_, 809 F.2d 195 (2d Cir. 1987), _cert. denied_, 484 U.S. 871 (1987), this Court dismissed claims arising out of the Bhopal gas disaster on _forum non conveniens_ grounds. The Court held, relying on the United States Supreme Court's decisions in _Gulf Oil Corp. v. Gilbert_, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and _Piper Aircraft Co. v. Reyno_, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), that the Indian legal system was a more suitable forum based on: the presence of claimants, evidence, and witnesses in India; the Indian government's interest in the outcome of the litigation; and

6

the administrative burden such litigation would tax on an American tribunal.

Though the subject of litigation in the present action is not pollution from the gas disaster but pollution stemming from general Bhopal plant operations, the majority of factors that influenced the Court's reasoning above are also present in this case. For example, claimants, evidence, and witnesses are located in India. India has a substantial interest in determining liability for pollution that occurred within its country to its citizens. This interest is the same regardless of whether pollution stems from the gas disaster at the plant or from normal plant operations. Moreover, India remains a world power whose "courts have the proven capacity to mete out fair and equal justice." In re Union Carbide, 634 F.Supp. at 867.

With that said, instead of dismissing based on forum non conveniens, the Court will dismiss Plaintiffs' claims based on the merits of each; with one exception, of course, that the Court will stay its decision on corporate veil-piercing to allow time for additional discovery. All other claims are summarily dismissed.

I.  Legal Standards

A.  Conversion of the Motion for Judgment on the Pleadings to a Motion for Summary Judgment

7

A Court "shall" convert a motion to dismiss into one for summary judgment when "matters outside the pleadings are presented to and not excluded by the court," Fed.R.Civ.P. 12(c), and where the non-movant "should reasonably have recognized the possibility that such a conversion would occur." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotations omitted). Notice of conversion can be inferred from the circumstances. Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 592 (2d Cir.1993). The moving party's submission of exhibits, affidavits, and the like gives the non-moving party notice of possible conversion. National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories, Division of/and American Home Products Corp., 850 F.2d 904, 911 (2d Cir.1988); In re G.A. Books, Inc., 770 F.2d 288, 295 (2d Cir.1985); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 1998); see also Morelli v. Cedel, 141 F.3d 39, 45 (2d Cir. 1998).

In connection with Defendant's motion, both parties submitted matters outside the pleadings, which the Court considered, triggering mandatory conversion to summary judgment. Plaintiffs are on notice of a possible conversion as evidenced by the submission of extrinsic materials, and the fact that Plaintiffs' opposition to Defendants' motion is titled: "Memorandum of Law in Opposition to Motion to Dismiss and/or for Summary Judgment . . . "

To the extent any part of Defendants' motion is a Rule 12(b)(6) motion to dismiss, it is converted to a Rule 56 motion for summary judgment.

## B.  Standard for Summary Judgment

A motion for summary judgment may be granted under Rule 56 of the Federal Rules of Civil Procedure if the entire record demonstrates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  When viewing the evidence, the Court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." <u>Delaware & Hudson Ry. Co. v. Consol. Rail Corp.</u>, 902 F.2d 174, 177 (2d Cir. 1990); <u>see also</u> <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997); <u>Anderson</u>, 477 U.S. at 255.  To survive the motion, the non-movant must present evidence of a genuine issue of fact that requires a trial. <u>Anderson</u>, 477 U.S. at  at 257.

## II.  Injunctive Relief Claims

There are no material issues of fact with regard to Plaintiffs' claims for injunctive relief in the form of medical monitoring or remediation.  This issue was already decided based on essentially identical facts in <u>Bano v. Union Carbide Corp.</u>, No

99 Civ. 11329, 2003 WL 1344884 (S.D.N.Y. Mar. 18, 2003), aff'd in part, vacated in part, 361 F.3d 696 (2d Cir. 2004) (affirmed with regard to injunctive relief claims).

In Bano, the same Defendants were sued on the same environmental claims by plaintiffs who also reside in the neighborhoods surrounding the Bhopal plant. In Bano, this Court dismissed claims for injunctive relief as infeasible. Id. at *8-9; see also United States v. American Cyanamid Co., 556 F.Supp. 361, 373 (S.D.N.Y. 1983), rev'd on other grounds, 719 F.2d 558 (2d Cir. 1983) (deciding that a court will not grant equitable relief where it "appears to be impossible or impracticable."). The Court noted that the Bano defendants, the same Defendants as in the present action, had "voluntarily built a hospital in Bhopal" to satisfy any obligations to the citizens of Bhopal. Id. at *9. The Court further remarked that,

> Requiring medical monitoring is an extraordinary remedy
> requiring extensive factual research and imposes a
> potentially indefinite duty upon defendants to care for a
> population for which it has already made substantial
> efforts. Balancing this request against the fact that
> defendants have already built the hospital shows this
> request not to be equitable.

Id. With regard to remediation, the Court concluded:

> A court will not grant equitable relief where it "appears
> to be impossible or impracticable." UCC now has no
> connection with the property and has not had any control
> over it for several years. Ordering remediation by the
> defendants would be ineffectual as they have no means or
> authority to carry it out. . . . While Plaintiffs
> correctly acknowledge that the Indian government would

10

cooperate with any measure imposed, that cooperation does not mandate this Court to order remediation by UCC.  The Court does not wish to direct a foreign government as to how that state should address its own environmental issues.  This court would have no control over any remediation process ordered.  This would render the injunctive relief ineffectual.

Id. at *8 (internal citations omitted).

Because the circumstances and facts here are essentially the same, the same reasoning applies to Plaintiffs' current injunctive relief claims.  Plaintiffs' claims for medical monitoring and remediation are dismissed as a matter of law.

III.  Damages Claims

A.  Defendants Are Not Liable Directly or as Joint Tortfeasors

Plaintiffs allege Defendants can be held liable directly and as joint tortfeasors for injuries sustained from pollution at UCIL's plant in Bhopal, India.  This claim is an attempt to circumvent corporate veil piercing requirements.  To hold a parent corporation and its directors liable for the actions of a subsidiary is an extraordinary course of action warranted only when corporate veil piercing requirements are met.  See Beck v. Consolidated Rail Corp., 2005 WL 2649247, *4 (S.D.N.Y. 2005); Fletcher v. Atex, Inc., 861 F.Supp. 242, 246-47 (S.D.N.Y. 1994), aff'd, 68 F.3d 1451 (2d Cir. 1995); see also Esmark, Inc., v. N.L.R.B., 887 F.2d 739, 759 (7th Cir. 1989) (finding "direct participation" theory of liability "limited to situations in which

11

the parent corporation's control over the particular transactions is exercised in disregard of the separate corporate identity of the subsidiary").

"The party who seeks to pierce the corporate veil of a parent company must make a two-part showing: '(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" <u>Beck</u>, 2005 WL 2649247 at *4 (quoting <u>Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.</u>, 122 F.3d 130, 134 (2d Cir.1997)).

The facts here establish that UCIL was UCC's subsidiary. If their interactions rose to the level where UCC was exerting complete domination over UCIL, this is an issue to be decided under Plaintiffs' separate corporate veil piercing claim. Trying to hold Defendants liable without first passing the veil piercing test puts the horse before the cart.

Nonetheless, Plaintiffs attempt to establish UCC's direct liability or liability as joint tortfeasors, arguing that Defendants made the decision to back-integrate the UCIL plant (Compl. ¶¶ 70-75), that Defendants knowingly transferred inadequate technology to UCIL (Compl. ¶¶ 76-83), and that Defendants predicted the pollution problem (Compl. ¶¶ 84-87).

12

The decision to back-integrate – in other words, to manufacture pesticides, rather than just process them – was proposed by UCIL, not UCC, and that proposal was made at the behest of the Indian government.  A December 2, 1973 cover letter forwarding UCIL's 1973 Capital Budget Proposal to the UCC Management Committee states:

> Attached is a proposal by Union Carbide India Limited to manufacture methyl-isocyanate based agricultural chemicals in India, beginning with Sevin and Temik.  Manufacture is necessary in support of the market already developed by UCIL because the Government of India (GOI) will not permit further imports of Sevin and Temik if this proposal is not implemented.

(Defs.' Ex. D1 at 4186, D5 at 4242.)  If UCC approved UCIL's proposal, it merely illustrates that UCC was acting as a parent.

To attempt to establish that UCC transferred inadequate technology to UCIL, Plaintiffs rely on references to and quotations from the UCIL Capital Budget Proposal discussed above.  Plaintiffs, however, refer falsely to this document as "Union Carbide's 1973 Capital Budget Proposal." (Compl. ¶ 76).  Upon inspection of the document, it is a UCIL, not a UCC, document (Defs.' Ex. D1 at 4188).

Even if this document were a UCC document and not a UCIL document, there would still be no evidence of an inadequate technology transfer by UCC.  The documents establish just the opposite; that UCIL elected to develop its own technology rather

13

than using UCC technology.  With regard to UCC's carbon monoxide

("CO") Process, UCIL's Budget Proposal states that,

> The UCC process is unsuitable because it is based on
> methane, which is unavailable at Bhopoal.
> Two other processes . . . were investigated and
> rejected . . . . Instead, UCIL has elected to develop its
> own process . . . with the help of an Indian-based
> consultant.

(Defs.' Ex. D1 at 4204.)  UCIL also rejected UCC's 1-Naphthol

technology because it would not be practical in India, and instead

developed its own process. (Defs.' Ex. D1 at 4204-05.)

Though the UCIL proposal did not reject the use of

UCC's MIC-to-Sevin technology, a Bhopal plant chronology shows

that MIC-to-Sevin was never actually used (Defs.' Ex. D19 at

3791).  Therefore, Defendants did not transfer inadequate

technology to UCIL.

Plaintiffs' last contention with regard to Defendants'

direct liability or liability as joint tortfeasors is that

Defendants predicted the pollution problem.  This allegation is

based on two out-of-context quotations from UCC documents.

Defendants produce copies of the documents from which Plaintiffs

quote, and the documents establish that UCC was not predicting

pollution, but instead was suggesting measures to its subsidiary

to prevent pollution.  The first quotation Plaintiffs misleadingly

excerpt, "[a]ll wastewater from the Pesticide Unit at Bhopal will

discharge into solar evaporation ponds" (Compl. ¶ 84), is actually

followed by another important sentence omitted by Plaintiffs, which states: "Plans are to construct the ponds . . . with impermeable linings to prevent contamination of groundwater." (Defs.' Ex. D3 at 4295.)

Plaintiffs' second quotation says that UCC "discussed the 'danger of polluting subsurface water supplies in the Bhopal area.'" (Compl. ¶ 85.) Plaintiffs leave out the beginning and end of the sentence, omissions that completely change the sentence's meaning. The sentence actually reads: "<u>to</u> <u>avoid</u> danger of polluting subsurface water supplies in the Bhopal area, this pond should be lined with clay suitable for rendering the pond bottom and dikes impervious to water." (Defs.' Ex. D3 at 4129) (emphasis added).

The actions complained of in this claim do not support a finding of direct/joint tortfeasor liability against UCC. Furthermore, UCIL was UCC's subsidiary. The law does not allow one to proceed legally against a parent corporation for its subsidiary's actions without first piercing the corporate veil. Plaintiffs' direct liability/joint tortfeasor claim is dismissed as a matter of law.

B.  Defendants Did Not Act in Concert With UCIL

Plaintiffs also seek to hold Defendants liable for acting in concert with UCIL to cause, conceal, and/or exacerbate

pollution at the UCIL plant in Bhopal. As with the previous claim, the proper legal lens for proceeding directly against Defendants is the corporate veil piercing test. See <u>Fletcher v. Atex, Inc.</u>, 861 F.Supp. 242, 246-47 (S.D.N.Y. 1994), <u>aff'd</u>, 68 F.3d 1451 (2d Cir. 1995); <u>see also</u> <u>In re TMJ Implants Products Liability Litigation</u>, 880 F.Supp. 1311, 1319-20 (D.Minn. 1995); <u>Halberstam v. Welch</u>, 705 F.2d 472, 484 (D.C. Cir. 1983). Even if passing the corporate veil piercing test were not <u>sine</u> <u>qua</u> <u>non</u> for proceeding against a parent corporation, Plaintiffs' claim would fail for a lack of any evidence demonstrating concerted action.

Plaintiffs make allegations with regard to two forms of concerted action liability – conspiracy and aiding and abetting. "Conspiracy requires an agreement to commit a tortious act. Aiding and abetting requires that the defendant [has] given substantial assistance or encouragement to the primary wrongdoer." <u>In re Terrorist Attacks on September 11, 2001</u>, 349 F.Supp.2d 765, 798 (S.D.N.Y. 2005)(citing <u>Rastelli v. Goodyear Tire & Rubber Co.</u>, 79 N.Y.2d 289, 295 (1992)); <u>see also</u> Restatement (Second) of Torts, § 876(a) & (b) (1979).

In each of the circumstances in which Plaintiffs claim Defendants acted in concert with UCIL, Defendants' role was not significant enough to meet the requirements for concerted action liability, and/or there is no underlying wrongdoer with which

16

Defendants could have acted in concert.  UCIL was making efforts to discover and remediate pollution, rather than to cause, exacerbate, or conceal it.

First, Plaintiffs allege that Defendants knew of pollution at the plant site "[d]uring UCIL's [o]perations." (Compl. ¶¶ 88-93.)  As evidence of Defendants' knowledge, Plaintiffs cite:  a 1993 study conducted by India's National Environmental Engineering Research Institute ("NEERI") and Arthur D. Little, Inc. ("ADL"), a 1982 telex from UCIL to UCC, and a 1989 internal UCC document.

The 1993 study does not provide evidence of Defendants' knowledge "[d]uring UCIL's [o]perations" because UCIL's operation of the plant ceased in 1984.  The 1992 telex, while it does notify UCC that UCIL is concerned about leakage from the ponds, also states that UCIL was addressing the problem by planning repairs with the assistance of environmental consultants. (Defs.' Ex. D10 at 1736.)  Similarly, the 1989 internal document Plaintiffs refer to shows that UCIL was taking steps to solve pollution problems. (Defs.' Ex. D19 at 3790.)

Second, Plaintiffs make several allegations of a cover-up on the part of UCC based on a document Plaintiffs refer to in their complaint as "Union Carbide's 'Bhopal Site Rehabilitation & Asset Recovery Project.'" (Compl. ¶ 94-107.)  The document is actually a UCIL document. (Defs.' Ex. D20.)  Plaintiffs further

17

allege that the Budget Proposal was prepared with the aid of Union Carbide's engineers. (Mem. in Opposition to Defs.' Mot. for Summ. J. 13.) Even if the Budget Proposal were a UCC document and was prepared with UCC's assistance, it is still no smoking gun, for rather than being evidence of an effort to conceal pollution, it is evidence of efforts to remediate pollution and cooperate with Indian authorities:

> [I]t will be necessary to appoint a reputable Indian engineering consultancy firm who will also be associated in the final clean-up operations.
> State Govt [sic] has already set up a team comprising of technical experts from public sector units to inspect the [plant site] and recommend suitable action for decontamination/neutralization . . . . [A]fter decontamination/neutralization, it is proposed that a contractor is appointed for safely dismantling the plant before disposal.

(Defs.' Ex. D20 at 2272.) This document also proposes a plan for "facilitat[ing] positive interactions with the concerned authorities . . . ." (Defs.' Ex. D20 at 2272.)

Third, Plaintiffs allege that UCC knew the results of NEERI's 1990 environmental report, finding "no contamination of soil and groundwater," were false. (Compl. ¶ 109.) This allegation is based on reports and actions purportedly undertaken and prepared by UCC, when they are in fact UCIL reports and actions. UCIL engaged NEERI to undertake a study of the plant site (Defs.' Exs. D25 at 1606, D41 at 3668), and internal

investigations were performed by UCIL, not Defendants (Defs.' Exs. D31, D45, D55, D63).

Even if UCC played a role in or approved these decisions, it was not acting in concert with UCIL to commit a tort.  UCIL hired NEERI, noting that it was a "a well known government sponsored institute whose investigations are well accepted by monitoring agencies." (Defs.' Ex. D63 at 2399.)  UCIL hired ADL, a reputable American-based environmental consultant, to ensure more accurate results. (Defs.' Exs. D63 at 2400, D41 at 3668.)

Fourth, Plaintiffs allege that UCC approved the burial of toxic waste. (Compl. ¶¶ 113-116.)  The burial was a form of plant-site remediation specifically recommended by a 1992 NEERI report and requested by the state government of Madhya Pradesh (Defs.' Ex. D49 at 3336).  Therefore, if Defendants approved UCIL's burial of toxic waste, it was not an attempt to cover up evidence of pollution as Plaintiffs allege, but was approval of UCIL's efforts to remedy the pollution problem at the Bhopal plant as directed by environmental experts and the state government.

Fifth, Plaintiffs claim that Defendants abandoned the remediation project because after UCC sold its remaining UCIL shares, no further remediation was done on the site before the lease was surrendered to local authorities.  If no further work was done at the plant site after UCC sold its shares, this is not

19

UCC's responsibility for it was no longer affiliated with UCIL. Further, the project, as the preceding paragraphs establish, was a UCIL project.  Defendants, therefore, correctly assert that "[b]ecause the Project was UCIL's, not Union Carbide's, there was nothing for Union Carbide to abandon." (Mem. in Supp. of Defs.' Mot. for Summ. J. 16.)

Plaintiffs' sixth and final argument in this section is that Defendants were responsible for UCIL's termination of the land lease for the plant site.  The land lease was surrendered in 1998, at which point UCC had no connection with UCIL, the named lessee, and UCC was never a party to the lease.  As a result, Defendants are not responsible for the lease termination.

Plaintiffs' allegations that Defendants acted in concert with UCIL are without merit.  There is no evidence of concerted action, and, even more important, concerted action liability cannot be used as a shortcut around veil piercing requirements to hold a parent liable.  This claim is dismissed as a matter of law.

C.  Plaintiffs Are Granted a Stay Regarding Corporate Veil Piercing

Plaintiffs also make a separate claim against Defendants based on corporate veil piercing.  Plaintiffs request additional time for discovery, specifically with regard to EIIL (UCIL's new name) and its corporate relationship with UCIL and

UCC, in order to oppose Defendants' contention that EIIL is a "financially viable corporation, fully capable of responding to plaintiffs' claims . . ."

Fed.R.Civ.P. 56(f) allows a court to grant a party opposing a motion additional time for discovery where "that party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Plaintiffs request additional discovery because discovery had not commenced at the time Defendants moved for summary judgment. The Court notes that, though discovery had not commenced in this action, extensive discovery was already conducted in the related case of <u>Bano v. Union Carbide Corp.</u>, No 99 Civ. 11329, 2003 WL 1344884 (S.D.N.Y. Mar. 18, 2003). In fact, most of the documents produced by Defendants in connection with their motion are documents produced during the <u>Bano</u> discovery where Plaintiffs' attorneys were the same as in the present case. As a result, Plaintiffs were most likely already in possession of sufficient evidence relating to Defendants' motion. Nonetheless, in an excess of caution, the Court grants Plaintiffs' request for additional discovery. Discovery shall be limited to EIIL and its corporate relationship to UCIL and UCC.

Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted on all claims but one: corporate

21

veil piercing. Plaintiffs are granted sixty days for additional discovery related exclusively to this issue. The discovery period shall be concluded by January 30, 2006. Plaintiffs will submit objections to summary judgment by March 15, 2006, and Defendants will reply by April 7, 2006. All other claims are dismissed.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **December 1, 2005**

**JOHN F. KEENAN**
**United States District Judge**