UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
JANKI BAI SAHU, <u>et</u> <u>al</u>.,          :
            Plaintiff,       :       04  Civ. 8825 (JFK)
     -against-                 :       **OPINION & ORDER**
                      :
UNION CARBIDE CORP. and            :
WARREN ANDERSON,                   :
            Defendants.      :
------------------------------X

<u>APPEARANCES</u>:
        For Plaintiffs Janki Bai Sahu, <u>et</u> <u>al</u>.:

                Richard S. Lewis, Esq.
                1100 New York Ave., NW
                Suite 500 West
                Washington, DC 20005

                H. Rajan Sharma, Esq.
                36 Ravenwood Court
                Edison, NJ 08820

                Curtis V. Trinko, Esq.
                16 West 46th St., Seventh Floor
                New York, NY 10036

                Richard Herz, Esq.
                EarthRights International
                1612 K Street, NW Suite 401
                Washington, DC 20006

        For Defendants Union Carbide Corp. and Warren Anderson:

                William A. Krohley, Esq.
                William C. Heck, Esq.
                Kelley Drye & Warren, LLP
                101 Park Avenue
                New York, NY 10178

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

The defendants' motion for summary judgment dismissing plaintiffs' remaining cause of action[1] for corporate veil piercing is granted.

## I.  Factual Background

Plaintiffs seek to pierce the corporate veil of defendant Union Carbide Corporation's ("UCC") former subsidiary Union Carbide India Limited ("UCIL"), to hold UCC liable for injuries allegedly caused by pollution from UCIL's pesticide formulation plant in Bhopal, India.

The UCIL plant began its operations in the mid-1960s, on land leased from the Indian state of Madhya Pradesh. (Compl. ¶ 70.)  UCIL was incorporated under Indian law in 1934.  50.9% of UCIL's stock was owned by its parent corporation UCC. (Compl. ¶¶ 62, 63.)

The UCIL plant was back-integrated in 1979-1980 to manufacture pesticides. (Compl. ¶ 70.)  During the manufacture of pesticides, hazardous wastes were generated and dumped within the plant's premises.  After a gas leak in 1984, the plant was closed

---

[1] "[P]iercing the corporate veil . . . is not, in and of itself, an independent cause of action but a procedural device through which a plaintiff may assert facts and circumstances to persuade the court to impose" a subsidiary's obligation on the parent. Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 321 (Bankr. S.D.N.Y. 1999).  For the sake of clarity, the Court may refer to veil piercing as a cause of action or a claim throughout this decision.

by the Indian government and never resumed normal operations.
(Compl. 94.)   Thereafter, all activity at the plant site was
monitored closely by the Indian Central Bureau of Investigation,
the Indian courts, and the Madhya Pradesh Pollution Control
Board.

In 1994, Union Carbide sold all of its remaining UCIL shares
(Compl. ¶ 117), and built a hospital in Bhopal with proceeds from
the sale, Bano v. Union Carbide Corp., No 99 Civ. 11329, 2003 WL
1344884 (S.D.N.Y. Mar. 18, 2003).  UCIL has since changed its
name to Eveready Industries India Limited ("EIIL"). (Compl. ¶
117.)  In 1998, EIIL terminated its lease of the Bhopal plant
site upon consent from the state government of Madhya Pradesh.
(Compl. ¶ 124.)

## II.  Procedural History

### A.  Litigation for Pollution Arising out of the Gas Leak

The procedural history of this case stretches back over
twenty years to a set of related cases filed in the wake of the
1984 gas leak at the UCIL plant in Bhopal.  The cases sought
recovery for injuries sustained as a result of pollution stemming
directly from the gas leak.  The Multi-District Litigation Panel
consolidated the actions before this Court.

The consolidated action was dismissed on June 10, 1986 based
on forum non conveniens. See In re Union Carbide Corp.Gas Plant
Disaster at Bhopal, India in December, 1984, 634 F. Supp. 842

3

(S.D.N.Y. 1986), aff'd as modified, 809 F.2d 195 (2d Cir. 1987),

cert. denied, 484 U.S. 871 (1987).  The Court held, relying on

the United States Supreme Court's decisions in Gulf Oil Corp. v.

Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70

L.Ed.2d 419 (1981), that the Indian legal system would be better

able to mete out justice and fix liability for the tragic event

based on:  the presence of claimants, evidence, and witnesses in

India; the Indian government's interest in the outcome of the

litigation; and the administrative burden such litigation would

tax on an American tribunal. Id.

The case proceeded in the Indian judicial system and was

settled in 1989.  Under the settlement order, UCC agreed to pay

$470 million to a compensation fund. Bano v. Union Carbide Corp.,

No. 99 Civ. 11329, 2000 WL 1225789, at *2 (S.D.N.Y. Aug. 28,

2000) (summarizing the settlement terms).

**B.   Litigation for Pollution Arising out of Normal Plant**
**Operations**

**1.   The _Bano_ Action**

After settlement of the action for injuries arising

specifically out of the gas disaster, residents of Bhopal and

several organizations representing the residents of Bhopal filed

a class action complaint before this Court asserting claims for

personal injury and property damage caused by pollution from the

4

normal operations of the UCIL plant, as distinct from pollution caused by the 1984 gas leak.  This Court dismissed the Bano plaintiffs' personal injury claims as untimely because they were discovered more than three years before the action was commenced. Bano v. Union Carbide Corp., No 99 Civ. 11329, 2003 WL 1344884 (S.D.N.Y. Mar. 18, 2003).  The entire case was eventually dismissed on summary judgment. Bano v. Union Carbide Corp., No. 99 Civ. 11329, 2005 WL 2464589 (S.D.N.Y. Oct. 05, 2005), aff'd, 2006 WL 2336428 (2d Cir. Aug. 8, 2006).

### 2.  **The Instant Action**

Plaintiffs were originally members of a putative class in the Bano action.  The present class action suit, filed on November 8, 2004, is comprised of plaintiffs whose personal injury claims are not time-barred as they were discovered within the three-year statute of limitations period. (Compl. ¶¶ 4-47.)

As in Bano, pollution arising out of the normal operations of the UCIL plant is the subject of the litigation.  The plaintiffs claim that contamination of the soil and drinking water supply of sixteen communities in the vicinity of the former UCIL plant caused injuries to the communities' residents. (Compl. ¶ 1.)  The plaintiffs assert three theories of liability against UCC: (1) that UCC "was a direct participant and joint tortfeasor in the activities that resulted in the environmental pollution"; (2) that UCC "worked in concert with UCIL to cause, exacerbate

and/or conceal the pollution problem in Bhopal"; and (3) that
UCIL acted as UCC's alter ego, justifying the piercing of UCIL's
corporate veil.[2] (Compl. ¶ 60.)  Based on these theories,
plaintiffs seek relief for negligence, public nuisance, private
nuisance, strict liability, medical monitoring, battery, and
injunctive relief.

On August 5, 2005, defendants moved for summary judgment,
pursuant to Federal Rule of Civil Procedure ("FRCP") 56 and/or
dismissal pursuant to FRCP 12(b)(6), arguing that all three of
plaintiffs' theories fail as a matter of law.  Plaintiffs
objected and applied for a stay on the veil piercing issue in
order to conduct additional discovery pursuant to FRCP 56(f).

On December 1, 2005, the Court dismissed, as a matter of
law, all of plaintiffs' claims with regard to the first and
second theories of liability; the direct participant and
concerted action theories, respectively. Sahu v. Union Carbide
Corp., 418 F. Supp.2d 407 (S.D.N.Y. 2005).  The Court granted a
stay allowing plaintiffs to conduct sixty days of additional
discovery related exclusively to veil piercing, the third and
remaining theory of liability.[3]  After the Court granted two

---

[2] No evidence is offered by the plaintiffs that in any way
implicates defendant Anderson.

[3] A discovery dispute followed, in which plaintiffs sought
to broaden the scope of permissible discovery.  The Court denied
the request. Sahu v. Union Carbide Corp., No. 04 Civ. 8825

additional extensions, discovery concluded on April 30, 2006.
With the benefit of this additional discovery, plaintiffs filed
renewed objections to defendants' motion for summary judgment on
the veil piercing issue.

The Court now considers whether summary judgment for the
defendants dismissing plaintiffs' remaining theory of liability
is appropriate.

### III.  **Discussion**

### A.  **Summary Judgment Standard**

A motion for summary judgment may be granted under Rule 56
of the Federal Rules of Civil Procedure if the entire record
demonstrates that "there is no genuine issue as to any material
fact and . . . the moving party is entitled to judgment as a
matter of law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
250 (1986).  When viewing the evidence, the Court must "assess
the record in the light most favorable to the non-movant and . .
. draw all reasonable inferences in its favor."  <u>Delaware &</u>
<u>Hudson Ry. Co. v. Consol. Rail Corp.</u>, 902 F.2d 174, 177 (2d Cir.

---

(S.D.N.Y. Jan. 9, 2005).
    Another dispute followed, in which plaintiffs sought the
issuance of a letter rogatory.  Although India is not a party to
the Convention on the Taking of Evidence Abroad in Civil or
Commercial Matters, making the likelihood of compliance with the
request an unknown, the Court granted plaintiffs' request, and a
letter rogatory was issued in January 2006. <u>Sahu</u>, No. 04 Civ.
8825 (S.D.N.Y. Jan. 11, 2006).

1990); see also McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d
Cir. 1997); Anderson, 477 U.S. at 255.

To survive the motion, the non-movant must present evidence
of a genuine issue of fact that requires a trial. Anderson, 477
U.S. at 257.  "The non-moving party may not rely on conclusory
allegations or unsubstantiated speculation." Scotto v. Alemas,
143 F.3d 105, 114 (2d Cir. 1998).

B. **New York Veil-Piercing Standard**

In an action based on the Court's diversity jurisdiction,
the choice-of-law rules of the forum state apply. Krauss v.
Manhattan Life Ins. Co., 643 F.2d 98, 100 (2d Cir. 1991).  Under
New York choice-of-law rules, because no conflict has been
demonstrated between the veil-piercing laws of India and New
York, the Court will apply New York law.[4] See Employers Insurance
of Wassau v. The Duplan Group, 899 F. Supp. 1112, 1118-19
(S.D.N.Y. 1995).

Under New York law, veil piercing is a rare exception to the
well-settled American principle of limited liability for
individual and corporate shareholders. See David v. Glemby Co.,
717 F. Supp. 162, 166 (S.D.N.Y. 1986); Billy v. Consolidated
Machine Tool Corp., 51 N.Y.2d 152, 163 (N.Y. 1980).  "Indeed, the

---

[4] It should also be noted that plaintiffs request the
application of New York law, and defendants do not object.  Both
parties cite New York law throughout their memoranda of law.

8

avoidance of personal liability for obligations incurred by a business enterprise is one of the fundamental purposes of doing business in the corporate form." Billy, 51 N.Y.2d at 163; accord William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 600 (2d Cir. 1989). Courts start with the presumption of corporate regularity and will only disregard the corporate form when the party seeking to veil pierce makes a substantial showing that the subject corporation is really a dummy or decoy corporation, see Pardo v. Wilson Line of Washington, Inc., 414 F.2d 1145 (D.C. Cir. 1969) (applying New York law), or where the subject corporation's "separate identity [is] so disregarded that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego," Garter v. Snyder, 607 F.2d 582 (2d Cir. 1979). Thus, the party seeking to veil pierce bears a "heavy burden." TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339 (N.Y. 1998); see Cargill Investor Services, Inc. v. Cooperstein, 587 F. Supp. 13, 15 (S.D.N.Y. 1984).

That party must prove "'(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d 95, 97 (2d Cir. 1997) (quoting American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997), and

citing <u>Freeman v. Complex Computing Co.</u>, 119 F.3d 1044, 1052-53 (2d Cir. 1997)).

This standard is a shift from earlier New York decisions in which courts would veil pierce upon a substantial showing of either control <u>or</u> fraud. <u>Id.</u>  Requiring both control and fraud "comports with the law of corporate veil piercing as stated most recently by the New York Court of Appeals." <u>Id.</u>  "Unless the control is utilized to perpetrate a fraud or other wrong, limited liability will prevail." <u>Freeman</u>, 119 F.3d at 1053.

**1.  Prong One: Domination**

In New York, mere ownership of a controlling number of shares in the subsidiary is "never" enough on its own to demonstrate the level of direct intervention necessary for veil piercing. <u>Billy</u>, 51 N.Y.2d at 163  Likewise, "[t]he mere existence of a parent-subsidiary corporate relationship is insufficient to establish a unity of interest between the two corporations" absent a showing of "complete dominion and control [over] the subsidiary's daily operations." <u>Feszczyszyn v. General Motors Corp.</u>, 669 N.Y.S.2d 1010, 1012 (N.Y. App. Div. 1998).

To decide whether the individual or corporate shareholder dominated the subject corporation in the necessary fashion, courts may consider various factors, including: (1) the absence of corporate formalities; (2) inadequate capitalization; (3)

10

whether corporate funds are used for personal purposes; (4) overlap in ownership, officers, directors, and personnel; (5) common office space; (6) the amount of business discretion of the corporation; (7) whether a parent corporation deals with the subject corporation at arms length; (8) whether parent and subsidiary corporations are treated as independent profit centers; (9) payment of the allegedly dominated corporation's debts by a parent corporation; and (10) whether the corporation had property that was used by the parent as its own. Bridgestone/Firestone, Inc. v. Recovery Credit Card Services, Inc., 98 F.3d 13 (2d Cir. 1996); Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991). (Because the defendants' summary judgment motion focuses on prong two of the veil piercing test, neither party explicitly addresses these factors in its motion papers.)

Courts examine the above-listed factors with the following core requirement in mind: "At the very least, there must be direct intervention by the parent in the management of the subsidiary to such an extent that 'the subsidiary's paraphernalia of incorporation, directors and officers' are completely ignored." Billy, 51 N.Y.2d at 163 (quoting Lowendahl v. Baltimore & Ohio R.R. Co., 287 N.Y.S. 62, 73-74 (App. Div. 1936)); see Truglia v. KFC Corp., 692 F. Supp. 271, 275 (S.D.N.Y. 1998) ("The mere assertion that a corporate parent is or was involved in the

decision-making process of its subsidiary, or that it controlled
the legitimate policies of its subsidiary, will not shift
liabilities among distinct corporate entities.")  The burden is
on the plaintiff to demonstrate such direct intervention on the
part of the parent. See Walkovszky v. Carlton, 18 N.Y.2d 414
(1966).

Although veil-piercing is often a fact-specific inquiry, MAG
Portfolio Consultant v. Merlin Biomed Group, 268 F.3d 58, 64 (2d
Cir. 2001), because the burden on the party seeking to veil
pierce is high and the presumption of corporate normalcy well-
established, courts have summarily dismissed attempts to veil
pierce where the record failed to establish any triable issue of
fact. Pfohl Brothers Landfill Site Steering Comm. v. Allied Waste
Systems, Inc., 255 F. Supp. 2d 134, 179 (W.D.N.Y. 2003) (citing
Potash v. Port Authority of New York and New Jersey, 719 N.Y.S.2d
290, 291 (2001) (dismissing on summary judgment where plaintiff
failed to meet burden of establishing any basis for veil
piercing); Katz v. N.Y. Tint Taxi Corp., 624 N.Y.S.2d 65, 66
(1995) (same); Sovereign Metal Corporation v. Ciraco, 621
N.Y.S.2d 296, 296-97 (1994) (same)); see Favour Mind Ltd. v.
Pacific Shores, Inc., 2004 WL 97649, at *8 (S.D.N.Y. Jan. 20,
2004) (same).

Illustrative of the high level of domination a party seeking
to veil pierce must establish, the Second Circuit, applying New

12

York law, has even dismissed veil-piercing claims, as a matter of law, where the record seemed replete with evidence of control. See, e.g., American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997). In American Fuel, the Circuit dismissed a veil-piercing claim where the subject corporation had no contacts, no employees, no independent space, no bank account, no capital or assets, and the shareholder paid the corporation's expenses from his own pocket without keeping record of the transactions. Nonetheless, the Court held that the evidence of domination was inadequate as a matter of law because the level of control demonstrated "no more than that [the subject corporation] was a start-up company . . . ."[5] Id. at 135.

Unlike in American Fuel, the record in the case at bar is far from replete with evidence of domination, thus making summary judgment more appropriate. Plaintiffs have offered documents in support of their veil-piercing claim, but the vast majority tends to negate the kind of domination required by the veil-piercing

---

[5] In American Fuel, 122 F.3d at 131-32, the plaintiffs sought to reverse pierce to bind the subject corporation to an arbitration agreement entered into individually by the company's president. The plaintiff argued that the corporation was bound by the agreement because the corporation was the president's alter ego. Id. The District Court held, as a matter of law, that plaintiffs could veil pierce, thereby binding the subject corporation to the arbitration clause. Id. The Second Circuit found that the District Court had erred in piercing the corporate veil. Id. The Circuit Court then entered judgment for the defendants because "the evidence of domination [wa]s inadequate as a matter of law." Id. at 135.

standard.  The Court discussed this evidence in detail in its
previous decision. See Sahu, 418 F. Supp.2d at 412-15.  To
summarize that discussion here for the sake of brevity,
plaintiffs have offered documents, which they represent as being
UCC documents when, in fact, the documents prove to be UCIL
documents. Id.  In other circumstances, plaintiffs
mischaracterize and misquote evidence to make it look inculpatory
when the evidence, on inspection, is actually exculpatory or
benign. Id.  The summary judgment standard only requires courts
to "draw all reasonable inferences" in the non-movant's favor.
Delaware & Hudson Ry. Co. V. Cinsol. Rail Corp., 109 F.2d 174,
177 (2d Cir. 1997) (emphasis added).

As an example of the type of evidence the Court is referring
to, plaintiffs have argued that the defendants made the decision
to back-integrate the UCIL plant to manufacture pesticides.
(Compl. ¶¶ 70-75.)  The documents establish that the decision to
back-integrate was proposed by UCIL, not UCC.  A December 2, 1973
cover letter forwarding UCIL's 1973 Capital Budget Proposal to
the UCC Management Committee states:

> Attached is a proposal by Union Carbide India Limited to
> manufacture methyl-isocyanate based agricultural
> chemicals in India, beginning with Sevin and Temik.
> Manufacture is necessary in support of the market already
> developed by UCIL because the Government of India (GOI)
> will not permit further imports of Sevin and Temik if
> this proposal is not implemented.

14

(Defs.' Ex. D1 at 4186, D5 at 4242.)

The only evidence that could possibly weigh in favor of control are three statements made by defendant Anderson: (1) "Suppose we were a 40 percent owned company or a 35 percent owned company, raises some inquiries on our part, do we want to participate around the world where you have less than absolute control?"; (2) "I am telling you if I knew personally of any location in the corporate world of Union Carbide that had an unsafe operation it would have been shut down"; and (3) "Yes . . . We had operated [the Bhopal site] safely for seven years." (Compl. ¶ 65.)  If these statements were taken as admissions of control, they would seem to demonstrate simply that UCC may have "controlled the legitimate policies of its subsidiary." Truglia, 692 F. Supp. at 275.  Such control does not warrant the shifting of liabilities between corporations. Id.  Even viewing these statements in a light most favorable to plaintiffs, they are simply not enough, especially in the face of ample contradictory evidence.

If anything, the evidence here, taken as a whole, shows nothing more than that UCIL was UCC's subsidiary.  As Chief Judge Kimba Wood made clear in a different case involving Union Carbide, "the mere establishment of a subsidiary, for the purpose of financial gain, in and of itself [does not] establish[]

15

'control' or 'domination' on the part of the parent." <u>Maltz v.
Union Carbide</u>, 992 F. Supp. at 302 (S.D.N.Y. 1998).

The Court stops short of granting summary judgment on this
prong because prong one is not the source of defendants' summary
judgment motion and because such a ruling is unnecessary.  As
discussed below, even if plaintiffs could establish that UCC
dominated UCIL, which they have not for veil-piercing purposes,
summary judgment dismissing plaintiffs veil-piercing claim is
appropriate based on prong two.  As New York law makes clear,
satisfaction of both prongs is required.

## 2.  **Prong Two:  Fraud or Wrong**

The second prong encompasses the overarching goal of the
veil-piercing doctrine, which is to prevent fraud or achieve
equity. <u>See</u> <u>International Aircraft Trading Co. v. Manufacturers
Trust Co.</u>, 297 N.Y. 285, 292 (N.Y. 1948).  To satisfy this prong
the party seeking to veil pierce must establish that the parent
corporation misused the corporate form for its own ends to commit
a fraud or avoid its obligations. <u>See</u> <u>TNS Holdings, Inc. v. MKI
Securities Corp.</u>, 92 N.Y.2d 335, 339-40 (1998).  As stated by the
New York Court of Appeals in <u>Morris v. New York State Dep't of
Taxation and Finance</u>, 82 N.Y.2d 135 (1993),

> domination, standing alone, is not enough; some
> showing of a wrongful or unjust act toward
> plaintiff is required.  The party seeking to
> pierce the corporate veil must establish that the

16

owners, through their domination, abused the
privilege of doing business in the corporate form
to perpetuate a wrong or injustice against that
party such that a court in equity will intervene.

### a.   <u>Inference of Abuse</u>

As a threshold matter, "[a]n inference of abuse [of the
corporate form] does not arise . . . where a corporation was
formed for legal purposes or is engaged in legitimate business."
<u>TNS Holdings</u>, 92 N.Y.2d at 339-40; <u>see</u> <u>OM Intercontinental v.
Geminex Int'l, Inc.</u>, No. 03 Civ. 6471, 2006 WL 2707327 (S.D.N.Y.
Sept. 18, 2006) (dismissing on summary judgment where corporation
"[wa]s a legitimate and functioning corporation duly incorporated
under the laws of New York [and] [t]here [wa]s no evidence that
it [wa]s undercapitalized, []or . . . insolvent . . . , and it
had gross revenues estimated at $5.4 to $8.69 million.")

According to the defendants, this is a case in which no
inference of abuse of the corporate form arises because after UCC
sold its shares in UCIL, (i) UCIL changed its name to EIIL, and
(ii) EIIL remains an economically viable corporation engaged in a
legitimate business.

### i.   <u>Name Change Issue</u>

Plaintiffs contend the Court is precluded from granting
summary judgment in defendants' favor because whether EILL is the
same corporation as UCIL with a new name, "is an issue of fact

that Defendants never raised in their summary judgment motion or 56.1 statement, and which therefore cannot form the basis for summary judgment." (Pls.' Mem. L. 14 note 10) (internal citations omitted).

This argument is odd given the first paragraph of Defendants' 56.1 Statement, which states: "Union Carbide India Limited is now named Eveready Industries India Ltd."  Defendants reiterate this statement in their Memorandum of Law in Support of Summary Judgment. (Defs.' Mem. L. 18.)  Even more compelling, the complaint filed by plaintiffs specifically states, "After the sale [of UCC's shares in UCIL], UCIL changed its name to Eveready Industries India Limited." (Compl. ¶ 123.)  This fact is confirmed by the Fresh Certificate of Incorporation Consequent on Change of Name issued under seal of the Registrar of Companies, West Bengal dated July 17, 2006. (Heck Aff. Ex. 1A.)  Plaintiffs have failed to establish a material issue of fact regarding UCIL's name change to EIIL.

### ii.  **EIIL's Viability**

Plaintiffs have also failed to establish a material issue of fact regarding EIIL's financial viability and status as an independent, legitimate corporation.  It is undisputed that EIIL has a market capitalization of 5.19 billion rupees, which translates to 115 million dollars. (Defs.' 56.1 Statement; Pls.' Mem. L. 13.)  Defendants have produced, among other pieces of

18

evidence, a certified copy of the Annual Report of EIIL for the period ended March 31, 2005, issued under the seal of the Registrar of Companies, West Bengal, dated December 21, 2005, which provides the details of the audited financial statements and shareholding pattern for EIIL, (Heck Aff. Ex. 1B), and EIIL's audited financial results for the year ended March 31, 2006, (Heck Aff. Ex. 3).

Instead of arguing that EIIL is not a financially viable, independent corporation, Plaintiffs argue that "damages will far exceed this figure [of 115 million dollars]."  Plaintiffs assert that the "evidence is not sufficient to establish that EIIL is capable of paying any judgment now or in the future."

These statements illustrate a misunderstanding of the relevant law.  EIIL's economic viability is not important for the purpose of looking into the future to see if EIIL can pay a specific dollar amount of damages.  EIIL's financial status is material to the extent it sheds light on EIIL's legitimacy as a corporation.  If, for example, EIIL were now defunct or had a negligible net worth, an inference of abuse would arise. Presumably, such a lack of funds could be the result of a parent skimming money from its subsidiary to avoid obligations or adverse judgments.  In this case, however, where EIIL is a bona fide corporation, no inference of abuse of the corporate form arises.

Plaintiffs' reliance on Path Instruments International Corp. v. Asahi Optical Co., 312 F. Supp. 805 (S.D.N.Y. 1970), is misplaced.  In Path, the defendant parent tried to argue that the plaintiff could proceed against the parent "only in the event that any resulting judgment against [the subsidiary] is unsatisfied." Id. at 811.  The District Court rejected this argument. Id.  Path does not control the case at bar because here the Court is not saying plaintiffs must first sue EIIL as a procedural matter.  Rather, the Court is saying, substantively, that no inference of abuse of the corporate form arises because EIIL remains a functional, financially viable corporation.

### b.  Further Inquiry into Fraud Prong

In cases where an inference of abuse arises, courts conduct further inquiry to determine whether the corporations's tenuous condition was caused purposely by the shareholders in order to commit a fraud or avoid obligations. See Cary Oil Co, v. MG Refining & Marketing, Inc., 230 F. Supp. 2d 439, 460 (S.D.N.Y. 2002); Favour Mind Ltd. v. Pacific Shores, Inc., No. 98 Civ. 7038, 2004 WL 97649, at *8 (S.D.N.Y. Jan. 20, 2004).  A classic example of conduct in satisfaction of the fraud prong is the stripping of assets of the subsidiary corporation by the parent to render the subsidiary judgment-proof. See American Fuel, 122 F.3d at 135 (citing Carte Blanche(Singapore) PTE, Ltd. v. Diner's Club Int'l, Inc., 758 F. Supp. 908, 917 (2d Cir. 1997)).

Cary Oil Co, v. MG Refining & Marketing, Inc., 230 F. Supp. 2d 439, 460 (S.D.N.Y. 2002) presents a good example of the level of purposeful conduct necessary to satisfy the fraud or wrong prong of the veil-piercing test.  The Cary Oil case involved three corporations, a grandparent, a parent, and a subsidiary. The subsidiary entered into contracts with customers for the sale of petroleum products. Id. at 443.  The contracts helped customers hedge the risks of volatile prices by allowing them "an option to unwind the hedges early to take advantage of favorable market movements." Id.  The grandparent corporation planned to eliminate the contracts because it decided the contracts of the subsidiary "definitely are not good for us." Id. at 459.  The grandparent then directed the firing of officers of the subsidiary who disagreed with the grandparent about the contracts. Id.  The grandparent also directed the hiring of an employee by the parent corporation, who following the directive of the grandparent unwound the hedges that had secured the subsidiary's contracts, causing the subsidiary to be in breach, thereby harming the plaintiffs who had contracted with the subsidiary. Id.

This situation should be contrasted with the facts of Favour Mind, 2004 WL 97649, where the District Court decided the corporate form had not, as a matter of law, been abused.  The evidence on the record demonstrated that the corporation's

21

financial deterioration was not part of a purposeful scheme by the shareholders to denude the subject corporation of its assets and avoid the corporation's obligations to the plaintiffs, but was instead due to the unforseen return of a number of defective goods to the corporation. Id. at *6-*8.

The difference between these two cases demonstrates the crux of the second prong of the veil-piercing test: The domination must have occurred "for the purpose of committing a wrong." MAG Portfolio Consultant v. Merlin Biomed Group, 268 F.3d 58, 64 (2d Cir. 2001) (emphasis added); see Maltz v. Union Carbide Chemicals & Plastics Co., 992 F. Supp. 286 (S.D.N.Y. 1998) ("[D]omination [must be] complete in respect to the transaction attacked." (internal quotations omitted)).  In Cary Oil, the parent dominated the subsidiary for the purpose of causing the subsidiary to breach its contracts.  Whereas in Favour Mind, the controlling shareholder did not dominate the corporation for the purpose of causing financial ruin to the corporation in order to avoid obligations to creditors.

Similarly, in the case before the Court, there is no showing that UCC dominated UCIL for the purpose of avoiding its obligations to the plaintiffs.  (The Court conducts this analysis keeping in mind that this is a somewhat theoretical discussion given the absence of evidence that UCC even dominated UCIL within the meaning of the veil-piercing test.)  Though it is not

completely clear from the complaint, the fraud or wrong alleged seems to be that defendants controlled UCIL in order to perpetrate a scheme to pollute the environment, and/or to conceal the pollution, and/or to prevent plant remediation.

The evidence on the record contradicts such allegations. The Court discussed this evidence in detail in its previous decision under the umbrella of plaintiffs other two theories of liability. <u>Sahu v. Union Carbide Corp.</u>, 418 F. Supp.2d 407, 412-15 (S.D.N.Y. 2005).

By way of example, plaintiffs' allegation that UCC predicted the pollution problem is based on two out-of-context quotations from UCC documents.  Defendants produce copies of the documents from which plaintiffs quote, and the documents establish that UCC was not predicting pollution, but instead was suggesting measures to its subsidiary to prevent pollution.

The first quotation plaintiffs misleadingly quote, "[a]ll wastewater from the Pesticide Unit at Bhopal will discharge into solar evaporation ponds" (Compl. ¶ 84), is actually followed by an even more important sentence omitted by plaintiffs, which states:  "Plans are to construct the ponds . . . with impermeable linings to prevent contamination of groundwater." (Defs.' Ex. D3 at 4295.)

Plaintiffs' second quotation says that UCC "discussed the 'danger of polluting subsurface water supplies in the Bhopal area.'" (Compl. ¶ 85.)  Plaintiffs leave out the beginning and end of the sentence, omissions that completely change the sentence's meaning.  The sentence actually reads: "to avoid danger of polluting subsurface water supplies in the Bhopal area, this pond should be lined with clay suitable for rendering the pond bottom and dikes impervious to water."  (Defs.' Ex. D3 at 4129) (emphasis added).  Such obviously purposeful omissions by counsel are outrageous and seem to be designed to intentionally mislead the Court.

Plaintiffs also offer evidence, which they claim proves that defendants knowingly transferred inadequate technology to UCIL. (Compl. ¶¶ 76-83.)  Plaintiffs rely on references to and quotations from the UCIL Capital Budget Proposal discussed above. Plaintiffs, however, refer falsely to this document as "Union Carbide's 1973 Capital Budget Proposal." (Compl. ¶ 76).  Upon inspection of the document, it is a UCIL, not a UCC, document (Defs.' Ex. D1 at 4188).

Even if this document were a UCC document and not a UCIL document, there would still be no evidence of an inadequate technology transfer by UCC.  This document and other documents establish just the opposite; that UCIL elected to develop its own technology rather than using UCC technology.  With regard to

UCC's carbon monoxide ("CO") Process, UCIL's Budget Proposal states that,

> The UCC process is unsuitable because it is based on methane, which is unavailable at Bhopoal.
> Two other processes . . . were investigated and rejected . . . . Instead, UCIL has elected to develop its own process . . . with the help of an Indian-based consultant.

(Defs.' Ex. D1 at 4204.)  UCIL also rejected UCC's 1-Naphthol technology because it would not be practical in India, and instead developed its own process. (Defs.' Ex. D1 at 4204-05.) Though the UCIL proposal did not reject the use of UCC's MIC-to-Sevin technology, a Bhopal plant chronology shows that MIC-to-Sevin was never actually used (Defs.' Ex. D19 at 3791).

After this misleading evidence has been weeded out, plaintiffs actually offer no evidence that supports the second prong of New York's veil-piercing test.  On such a record, summary judgment is appropriate. See Law Offices of Curtis V. Trinko v. Verizon Communications, Inc., No. 00 Civ. 1910, 2006 WL 2792690, at *9 (S.D.N.Y. Sept. 27, 2006) (granting summary judgment where evidence offered by the plaintiff was incredible); see also Jeffreys v. City of New York, 426 F.3d 549 (2d Cir. 2005) (granting summary judgment where "no reasonable person would undertake the suspension of disbelief necessary to give credit to [plaintiff's] allegations" (internal quotations omitted)).

### C.  **Additional Discovery**

Plaintiffs argue that summary judgment is premature because they need time for additional discovery.  The Court has already, at the plaintiffs' request, delayed disposition of this motion three times for a total period of about five months.  Based on the extensive record already before the Court, it seems unlikely that further discovery would be fruitful.  The plaintiffs have not made any showing of a likelihood that there is additional evidence, nor any demonstration of how further discovery might reveal the existence of such evidence. See Waldron v. Cities Services Co., 361 F.2d 671 (2d Cir. 1966), aff'd, 391 U.S. 253 (1968).  Plaintiffs' argument that letters rogatory customarily take from six months to a year to execute is unpersuasive. Plaintiffs could have initiated the process in November of 2004, but instead waited until December 2005. See Sitts v. United States, 811 F.2d 736 (2d Cir. 1987); Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919 (2d Cir. 1985). Plaintiffs request for additional discovery is denied.

### D.  **"Unclean Hands" Doctrine**

Plaintiffs' attempt to use the "unclean hands" doctrine to defeat this motion is also without merit.  Plaintiffs assert that "UCC seeks to invoke equity having profited from its own fraud." However, it is plaintiffs, not defendants, who seek to invoke equity to veil pierce.  Furthermore, the "unclean" activities

defendants allegedly took part in, were not alleged in the complaint and are different from the claims at issue in this case.

## IV.   Conclusion

For the reasons set forth above, defendants' motion for summary judgment dismissing plaintiffs' claims is granted. This case is closed, and the Court directs the Clerk to remove the case from the Court's docket.

SO ORDERED.

Dated:        New York, New York
              November $2 \bigcirc$, 2006

                                    John F. Keenan

                                    **JOHN F. KEENAN**
                                    United States District Judge

27