UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
SAHU, et al.,                           :
                                        :
                   Plaintiffs,          :
                                        :   **MEMORANDUM OPINION**
              v.                        :      **& ORDER**
                                        :   04 Civ. 8825(JFK)
UNION CARBIDE CORPORATION, et al.,      :
                                        :
                   Defendants.          :
----------------------------------------X

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Plaintiffs' motion under Rule 56(f) of the Federal Rules of Civil Procedure for an order staying the time for their opposition to Defendants' May 18, 2005, motion to dismiss and/or for summary judgment until further discovery can be conducted.

## I.   BACKGROUND

The Court assumes familiarity with the facts and procedural history of the case.  For a detailed statement thereof, see Sahu v. Union Carbide Corp., 548 F.3d 59, 60-65 (2d Cir. 2008).

Briefly, Plaintiffs seek recovery for injuries allegedly caused by pollution from the Union Carbide India Limited ("UCIL") plant in Bhopal, India (the "Bhopal Plant"). Plaintiffs allege that the Bhopal Plant – which was the site of a catastrophic gas leak in 1984 unrelated to the instant claims – produced hazardous wastes during its normal operations that

1

contaminated the soil and drinking water of local communities. UCIL was a subsidiary of the Union Carbide Corporation ("UCC") until 1994, when UCC sold all of its shares.   UCIL has since changed its name to Eveready Industries India Limited ("EIIL"). Plaintiffs seek to hold UCC and its former CEO, Warren Anderson, liable for their injuries on the grounds that (1) they were direct participants and joint tortfeasors in the activities that resulted in the pollution; (2) they worked in concert with UCIL to cause, exacerbate, or conceal the pollution; and (3) UCIL acted as UCC's alter ego, justifying piercing the corporate veil.

The instant motion arises in the wake of the following procedural history.   On May 18, 2005, Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or for summary judgment pursuant to Rule 56.   To the extent Defendants moved for dismissal on the pleadings, the Court converted the motion to one for summary judgment on the grounds that matters outside the pleadings had been presented to the Court and that Plaintiffs were on notice that such a conversion was possible. Sahu v. Union Carbide Corp. (Sahu I), 418 F. Supp. 2d 407, 410-11 (S.D.N.Y. 2005).   The Court granted Defendants summary judgment on all claims, save

Plaintiffs' veil-piercing claim.[1]  Id. at 416.  Defendants had argued that there was no equitable basis to pierce the corporate veil since EIIL – UCIL's current incarnation – is a financially viable corporation capable of meeting its liabilities.  In their opposition to Defendants' motion, Plaintiffs requested an opportunity to conduct discovery pursuant to Rule 56(f) in order to rebut this assertion.  The Court consented and reserved decision on the veil-piercing claim until Plaintiffs had received discovery regarding "EIIL and its corporate relationship to UCIL and UCC."  Id.

Plaintiffs subsequently submitted 199 document requests and sought to take four depositions on wide-ranging topics.  The Court denied these as beyond the scope of permitted discovery save for seventeen of the document requests, which explicitly related to EIIL.  Sahu v. Union Carbide, No. 04 Civ. 8825, 2006 U.S. Dist. LEXIS 714 (S.D.N.Y. Jan. 9, 2006).  The Court also issued a letter rogatory addressed to the appropriate judicial

---

[1] As noted in the Court's prior opinion, "'piercing the corporate veil . . . is not, in and of itself, an independent cause of action but a procedural device through which a plaintiff may assert facts and circumstances to persuade the court to impose' a subsidiary's obligation on the parent." Sahu I, 418 F. Supp. 2d at 410-11 (quoting Sec. Investor Protection Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 321 (Bankr. S.D.N.Y. 1999)).  The Court refers to it as a claim, nonetheless, in keeping with common legal parlance.

authority in India to obtain documents directly from EIIL on relevant topics. (Heck Aff. Ex. 4.)

After the close of this discovery, by order and opinion dated November 20, 2006, the Court granted Defendants summary judgment on the veil-piercing claim. Sahu v. Union Carbide Corp. (Sahu II), No. 04 Civ. 8826, 2006 U.S. Dist LEXIS 84475 (S.D.N.Y. Nov. 20, 2006). The Court found that there was insufficient evidence to make the wrong- or fraud-prong of the veil-piercing test a genuine issue of material fact. Id at *30. With regard to EIIL, the Court found that Plaintiffs could not dispute that it was a financially viable corporation, meaning no inference of abuse of the corporate form could be drawn. Id. at *20.

The Second Circuit addressed in a single opinion both the initial grant of summary judgment on the non-veil-piercing claims and the subsequent grant of summary judgment on the veil-piercing claim. Sahu v. Union Carbide Corp., 548 F.3d 59 (2d Cir. 2008). Twice noting that it was a "close case" or "close question," id. at 67, 70, the Second Circuit vacated and remanded both decisions. Regarding the non-veil-piercing claims, the appellate court found that Plaintiffs had not received sufficient notice that Defendants' motion would be converted to one for summary judgment. Id. at 66-70; see also

4

id. at 70 ("Underlying the notice requirement is the principle that parties are entitled to a reasonable opportunity to present material pertinent to a summary judgment motion."). Regarding the veil-piercing claim, the Second Circuit found that its dismissal relied in part on the dismissal of the non-veil-piercing claims; consequently the appellate court vacated the Court's judgments in their entirety. In closing, the Second Circuit observed that "relatively limited further proceedings" were likely necessary "in connection with consideration of summary judgment." Id.

Plaintiffs now bring the instant motion, requesting a stay and an opportunity under Rule 56(f) to conduct discovery relevant to the following issues:

1.  Whether Union Carbide directly participated in and/or acted as a joint tortfeasor with [UCIL] in the activities and decisions that caused or resulted in the environmental pollution at issue;

2.  Whether Union Carbide conspired with and/or aided and abetted UCIL to cause, exacerbate and/or conceal the pollution problem in Bhopal;

3.  Whether the corporate veil of UCIL and/or [EIIL] may be pierced to hold UCC liable for the pollution at issue; and

4.  Whether UCC may be held liable for some form of injunctive relief and medical monitoring.

(Pls.' Mem. 3.) They propose that this discovery be effected through 63 requests for the production of documents from

5

Defendants (Garbow Aff. Ex. B); 18 requests for the production of documents from third party Arthur D. Little, a consulting firm that assisted in the environmental rehabilitation of the Bhopal site (Garbow Aff. Ex. F); a Rule 30(b)(6) deposition of Defendant UCC (Garbow Aff. Ex. G); depositions of several of Defendant UCC's former officers (Garbow Aff. Exs. H, I, J); and 86 requests for admission (Garbow Aff. Ex. K).

## II.  DISCUSSION

### A.  Rule 56(f)

Rule 56(f) provides,

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

Fed. R. Civ. P. 56(f).  According to the Second Circuit's interpretation of Rule 56(f), "when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." Commercial Cleaning Servs. v. Colin Serv. Sys., 271 F.3d 374, 386 (2d Cir. 2001).  The affidavit required by Rule 56(f) must state "(1) what facts are sought and how they

6

are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Hudson River Sloop Clearwater, Inc. v. Dep't of Navy, 891 F.2d 414, 422 (2d Cir. 1989).

"Rule 56(f) discovery is specifically designed to enable a plaintiff to fill material evidentiary gaps in its case in an effort to withstand summary judgment." Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc., 725 F. Supp. 669, 680 (N.D.N.Y 1989). It does not, however, permit a plaintiff to engage in a "fishing expedition." Waldron v. Cities Serv. Co., 361 F.2d 671, 673 (2d Cir. 1966). A plaintiff must also show "that the material sought is germane to the defense, and that it is neither cumulative nor speculative." Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994). "[I]f the court decides to grant . . . a continuance, it must also determine the appropriate scope and manner of . . . discovery." Capital Imaging Assocs., P.C., 725 F. Supp. at 680 (citing Sam Wong & Son, Inc. v. N.Y. Mercantile Exch., 735 F.2d 653, 678 (2d Cir. 1984)); see also Cruden v. Bank of New York, 957 F.2d 961, 972 (2d Cir. 1992) ("A trial court enjoys wide discretion in its handling of pre-trial discovery.").

The Court first considers whether Plaintiffs have demonstrated a need for the discovery sought under Rule 56(f) and, second, whether any of the discovery that survives this analysis is overbroad or unduly burdensome.

### B.  Plaintiffs' Need For Rule 56(f) Discovery

The parties' primary disagreements under Rule 56(f) concern whether the discovery Plaintiffs seek is "germane" to their opposition to the motion for summary judgment and/or "cumulative" of past discovery received in this and a related case.

### 1.  Germane

Defendants contend that the discovery sought by Plaintiffs is not germane to Defendants' narrow summary judgment argument on Plaintiffs' direct, joint, and concerted action liability claims.  Defendants' summary judgment argument is simply that the documents Plaintiffs cite in their complaint contradict their allegations.

The Court agrees, as it did in its prior decisions, that Plaintiffs' complaint cites documents that contradict or undermine Plaintiffs' claims of direct, joint, and concerted action liability. See Sahu I, 418 F. Supp. 2d at 412-15; Sahu

II, 2006 U.S. Dist. LEXIS 84475, at *27-30.[2]  For example, in support of their claim that UCC transferred inadequate technology to UCIL – a lynchpin of Plaintiffs' direct liability theory – the complaint relies on a 1973 "UCC" capital budget proposal.  In reality the budget proposal was a UCIL document, not a UCC document, and it expressly stated that UCIL would develop its own technology, rather than turn to UCC for help. Sahu I, 418 F. Supp. 2d at 413.

The Court recognizes, however, that Plaintiffs can overcome these contradictions, and with them Defendants' summary judgment argument, by obtaining documents that actually support their claims as expressed in the complaint. See Vox Advertising & Design, Inc. v. Makela, No. 99 Civ. 10097, 2000 U.S. Dist. LEXIS 16533, at *14-17 (S.D.N.Y. Nov. 13, 2000) (denying summary judgment where parties' documentary evidence was conflicting and inconclusive).  It is arguable that more than mere speculation motivates Plaintiffs' belief that such documents exist:  On the question of whether UCC transferred inadequate technology to UCIL, they point to Exhibit 1 of the Heck Affidavit, which indicates that UCIL obtained some of its technology from the

---

[2] The Court is aware that it is not bound by the law of the case since these decisions were vacated. See Johnson v. Bd. of Educ. of Chicago, 457 U.S. 52, 53-54 (1982).  It nonetheless reaches the same conclusion after renewed, independent consideration of the complaint.

Stauffer Chemical Company in a "purchase thru UCC." (Heck Aff. Ex. 1 at UCC 04705.)  They also offer a September 8, 1975, letter from Union Carbide Eastern, assuring a creditor that "[k]now-how for the [Bhopal] project is being provided by Union Carbide Corporation of New York" (Handley Aff. Ex. 3 at 2); as well as a September 22, 1975, memorandum from an engineer stating that UCC will "furnish technical services during the first five years of operation" and that UCC's "know-how, technical support, and majority ownership of UCIL provide assurance of technical competence." (Handley Aff. Ex. 5 at 1-2.) These documents may suggest there is reason to believe discovery regarding the transfer of technology – such as Document Request No. 34 – might yield documents that Plaintiffs can use to justify their opposition to the motion for summary judgment. Other discovery requests that may yield germane documents include Document Request Nos. 21-25, 28, and 31-34.[3]

Nonetheless, the Court finds that a number of Plaintiffs' discovery requests are not in fact germane to the motion for summary judgment.  For example, Document Request No. 35 asks for "[a]ny statement of business principles issued by UCC, Union Carbide Eastern or Union Carbide Agricultural Division."

---

[3] The Court does not consider whether discovery requests that are obviously cumulative or improper for reasons discussed below are germane.

Plaintiffs fail to show how "business principles" could possibly be germane.   The Court denies Document Request No. 35 and, for similar reasons, Document Request Nos. 8-10, and 20.

## 2.  Cumulative

Defendants contend that many of Plaintiffs' discovery requests are cumulative of (a) the Rule 56(f) discovery already received in this case and (b) discovery received in a related case, Bano v. Union Carbide Corp., No. 99 Civ. 11329.   The Court agrees in large measure.

### a.  Earlier Rule 56(f) Discovery

Plaintiffs' discovery requests related to their veil-piercing claim are cumulative of the Rule 56(f) discovery they received in 2006.   Defendants moved for summary judgment on this claim on a single ground: there is no equitable basis to pierce the corporate veil since EIIL is a financially viable corporation capable of meeting its liabilities.   The Court already afforded Plaintiffs an opportunity to obtain discovery for the purposes of rebutting this assertion.   Consequently, the requests Plaintiffs now make to obtain veil-piercing discovery are either duplicative of past discovery or unnecessary to withstand Defendants' narrow summary judgment argument.[4]

---

[4] In their reply affidavit, Plaintiffs urge the Court to reject Defendants' financial viability defense as a matter of law. (See Handley Aff. ¶¶ 39-44.)   Ironically, this suggests

Therefore, the Court denies all requests that Plaintiffs categorize as "Corporate Veil Piercing" discovery, namely, Document Request Nos. 36-62.

Nonetheless, the Court declines Defendants' invitation to deny all requests that might yield information relevant to the veil-piercing claim. (See Heck Aff. ¶ 38.)   For example, Defendants contend that discovery regarding the "Bhopal Task Force" – a group that allegedly played a role in managing UCIL and that may have included UCC employees – should be denied on these grounds.   It is true that such discovery would be relevant to the hypothetical veil-piercing defense that UCC did not sufficiently dominate UCIL to justify disregarding the corporate form.   See Morris v. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993) (holding that domination is required to pierce the corporate veil).   However, such discovery is also relevant

_____

Plaintiffs believe they need no further discovery to resist Defendants' motion for summary judgment.   Although the Court agrees that no further discovery is needed, it declines to rule on Defendants' financial viability defense at this time.   Doing so without affording Defendants a chance to respond to Plaintiffs' never before raised legal arguments would be unfair and would deprive the Court of valuable assistance in deciding an important legal question.   See Playboy Enters., Inc. v. Dumas, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court.").   Moreover, the Court is aware that its prior analysis of the veil-piercing claim relied, in part, on its analysis of the non-veil-piercing claims.   See Sahu, 548 F.3d at 70. Therefore, any ruling before receiving further briefing on all claims would be premature.

to Plaintiffs' claims that UCC and UCIL were joint tortfeasors or co-conspirators. See Rastelli v. Goodyear Tire & Rubber Co., 79 N.Y.2d 289, 295 (1992) (discussing concerted action liability).   The Court will not deny Plaintiffs discovery necessary to resist the motion for summary judgment on the non-veil-piercing claims simply because it may also be relevant to veil piercing.

## 2.  **Bano Discovery**

Plaintiffs make numerous requests cumulative of the discovery they received as members of the putative plaintiff class in Bano v. Union Carbide Corp., No. 99 Civ. 11329, a related case.   In order to explain its ruling here, the Court recounts the history of discovery in Bano at some length.   That case involved claims essentially identical to those asserted here, save for the important difference that those claims were time-barred and, as such, were ultimately dismissed. Bano v. Union Carbide Corp., No. 99 Civ. 11329, 2003 U.S. Dist. LEXIS 4097 (S.D.N.Y. Mar. 18, 2003).   Plaintiffs in the instant case consist of Bano plaintiffs whose claims are not in fact time-barred.

Initial discovery commenced in Bano on December 17, 2001, concluded on March 18, 2002, and was limited exclusively to

document requests. (Heck Aff. Ex. 5A.[5])  During discovery, Defendants produced documents related generally to "UCIL's practices at the Bhopal plant for the disposal of chemical waste products and the alleged environmental contamination or pollution of the soil or groundwater in or around the Bhopal plant, not arising out of or related to the [1984] Bhopal Disaster."  (Heck Aff. Ex. 5C at 3.)  More specifically, Defendants produced documents responsive to the following topics (the "Eight Initial Discovery Topics"):

1.  Chemical spills and leaks which could have caused soil or ground water contamination in or around the Bhopal plant;

2.  The plant's disposal and handling practices for chemical waste products;

3.  The plant's disposal facilities;

4.  The plant's environmental practices, as reflected in manuals, internal memoranda, correspondence, etc.;

5.  The plant's safety procedures related to the environment and disposal of chemicals and waste products;

6.  Studies, surveys, safety audits, and action plans involving the environment or chemical disposal practices;

7.  The solar evaporation ponds; and

---

[5]  Exhibit 5 to the Heck Affidavit is a July 20, 2005, letter from Defendants to Magistrate Judge Pitman, which itself contains exhibits designated by letters.  Rather than use the awkward notation "Heck Aff. Ex. 5 Ex. A," the Court adopts the shorthand "Heck Aff. Ex. 5A."

8. The toxicity of the plant's chemical waste
products.

(Id. at 3-4.)

In a March 25, 2002, letter to the Court, Defendants described their document production effort in detail: They devoted over 900 attorney hours at a cost of $270,000 to review 355 boxes of potentially relevant materials. (Id. at 2.) This yielded a total production of 4,102 pages of documents, which, as Plaintiffs note, amounts to less than two banker's boxes.

Following this document production, a dispute arose, which the Court summarized in an April 8, 2002, order:

> This discovery dispute is occasioned by the overbroad discovery requests of plaintiffs relating to the environmental claims . . . . Discovery closed on March, 18, 2002. After a conference was held on March 18, 2002, in an effort to resolve the differences between the parties, plaintiffs served, without any authorization from the Court, seventeen (17) new discovery requests which far exceed the environmental claims here and which, rather than refining the original requests, broadened them.

(Heck Aff. Ex. 5I at 1.) Noting that Defendants had "already produced 4102 pages of documents," the Court determined that it was appropriate at that juncture to permit Defendants to move for summary judgment and, if necessary, to permit Plaintiffs to move in response for additional discovery under Rule 56(f). (Id.

15

at 1-2.)  Plaintiffs did so move and the Court found that they

were entitled to the following additional discovery:

> 1.  Documents concerning the lease granted by the State
>     of Madhya Pradesh to UCIL and its subsequent
>     modification or termination in 1998;
>
> 2.  Documents concerning any contamination found in or
>     around solar evaporation ponds at the UCIL plant
>     site while UCIL was in possession and control of
>     the plant and any measures taken to remedy the
>     contamination during that time;
>
> 3.  Documents concerning the decision to back-integrate
>     the UCIL plant and the technology and environmental
>     risks associated with such decision;
>
> 4.  Documents concerning the alleged seizure or control
>     of the UCIL plant site by governmental authorities
>     following the Bhopal disaster, through the sale of
>     UCIL in 1994 and the alleged termination of UCIL's
>     lease in 1998;
>
> 5.  Documents concerning the sale of Union Carbide's
>     equity in UCIL to McLeod Russell in 1994 including
>     documents concerning the sale of Union Carbide's
>     equity in Eveready Industries and the subsequent
>     merger of McLeod Russell and Eveready Industries,
>     the continuing involvement after the sale of the
>     former UCIL, renamed [EIIL], in site rehabilitation
>     efforts at the Bhopal plant site.

(Heck Aff. Ex. 6 at 2-3.)  The Court certified that Defendants'

subsequent Rule 56(f) production complied with the Court's

mandate. (Heck Aff. Ex. 7 at 1.)  With Rule 56(f) discovery

complete, the Court granted Defendants' motion for dismissal,

Bano v. Union Carbide Corp., No. 99 Civ. 11329, 2003 U.S. Dist.

LEXIS 4097 (S.D.N.Y. Mar. 18, 2003), a decision that the Second

Circuit affirmed in part and vacated in part, 361 F.3d 696, 702

(2d Cir. 2004) (remanding plaintiffs' claims for monetary and injunctive relief for injury to property).

On June 23, 2005, the <u>Bano</u> plaintiffs moved before Magistrate Judge Pitman, who oversaw discovery in the case, for an order to compel further discovery on the remanded claims. Plaintiffs argued that additional discovery was needed since (1) Defendants excluded from their 2002 production documents that made reference to the 1984 disaster at the Bhopal Plant; (2) Defendants produced only a single box of responsive documents, a small percentage of the 355 boxes of material that they actually reviewed; and (3) there were "inexplicable gaps" in the documents produced.[6] (Handley Aff. Ex. 1 at 3-5.) Defendants countered that the exclusion of any documents concerning the 1984 disaster was proper since Plaintiffs' claims based thereon had been dismissed, that the small number of documents produced reflected Defendants' limited role in building and operating the Bhopal Plant, and that Plaintiffs' "inexplicable gaps" argument was baseless.

Although Magistrate Judge Pitman did not formally rule on Plaintiffs' motion to compel, he did hold a conference on the motion that the Court finds relevant to its analysis here. At the conference, Magistrate Judge Pitman stated, "The defendants

_____

[6] Plaintiffs made other arguments not relevant to the instant motion.

17

have produced all the documents in their possession, custody or control that relate to [the Eight Initial Discovery Topics]." (Heck Aff. Ex. 9 at 3.)  He further stated that the small number of documents produced was not "surprising" in light of Defendants' position that they had limited involvement with the operations of the Bhopal Plant. (Id. at 4.)  Notably, Plaintiffs used the conference to question the adequacy of the 2002 document production on topics other than the Eight Initial Discovery Topics, such as Defendants' failure to produce an organizational chart or discovery related to the history of the Bhopal Plant.

The Court concludes that the discovery produced in Bano is cumulative of much of the discovery sought in this case.  The Court finds no reason to doubt Defendants' repeated representations that the Bano discovery was thorough and complete – representations that Magistrate Judge Pitman endorsed.  Therefore, to the extent that Plaintiffs' instant discovery requests are duplicative of the Bano discovery, they are denied as cumulative.  This ruling applies to the following discovery requests:  Document Request Nos. 1-6, 11, 13, 17-19, 27, and 29.

The Court also finds that, to the extent they are not duplicative of the Bano discovery, a number of Plaintiffs'

18

requests are not germane.   For example, Document Request No. 7 asks for "[d]ocuments provided to or received from Arthur D. Little or Burson-Marsteller referring or relating to the Bhopal plant."   (Burson-Marsteller is a public relations firm that represented UCC.)   Insofar as such documents were not provided as part of the <u>Bano</u> discovery in response to, among other requested topics, "measures taken to remedy the contamination," they are not germane.   In arguing otherwise, Plaintiffs can do no more than speculate.   The Court denies Document Request No. 7 and, for similar reasons, Document Request Nos. 14-16, 26, 30.

## C.   Overbroad

Courts deny or modify discovery requests that are fashioned so broadly that they would require the production of irrelevant material.   <u>See, e.g.</u>, <u>Martinez v. Robinson</u>, No. 99 Civ. 11911, 2002 U.S. Dist. LEXIS 4454 (S.D.N.Y. Mar. 18, 2002); <u>Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.</u>, No. 90 Civ. 7811, 1994 U.S. Dist. LEXIS 17769 (S.D.N.Y. Dec. 13, 1994).   One of Plaintiffs' requests is so overbroad that it requires denial. Document Request No. 12 requests "[d]ocuments referring or relating to cost-cutting or economy drive measures proposed or implemented at the Bhopal plant between 1980 and 1984."   This request has the potential to dredge up a mountain of irrelevant documents, such as memoranda advising plant employees to turn

19

off the lights when they leave for the night or to use both sides of Post-it notes.   Therefore, the Court denies Document Request No. 12.

Two other requests require slight modification.   Document Requests Nos. 21 and 25 both request documents relating to the "ownership, operation or control of the Bhopal plant."   The Court strikes the word "operation" as being susceptible to various meanings, a number of which would make the requests overbroad.

### D.   Burdensome

Courts may limit discovery on the ground that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); see also Fed. R. Civ. P. 26(b)(2)(c)(i) (stating that courts may limit discovery where it "can be obtained from some other source that is more convenient, less burdensome, or less expensive").   In considering whether any of Plaintiffs' requests are unduly burdensome, the Court is mindful of the Second Circuit's observation that this case likely only

requires "relatively limited further proceedings" in connection with the summary judgment motion. <u>Sahu</u>, 548 F.3d at 70.

The Court finds that, given the needs of the case, all of Plaintiffs' proposed depositions are unduly burdensome.  This is particularly so since the depositions would require Defendants to prepare witnesses to respond to questions regarding events that took place between fifteen and thirty-five years ago.  Not only would this be difficult and costly, but the benefit to the Plaintiffs would likely be extremely low:  no witness can be expected to provide accurate and detailed accounts of events so far in the past.  Furthermore, as summarized below, the Court is granting Plaintiffs limited document discovery – this discovery is a more convenient, less costly, and less burdensome alternative to the depositions.[7]

The Court also denies as unduly burdensome Plaintiffs' request to take discovery from third party Arthur D. Little.  As

---

[7] Plaintiffs' request for depositions relies on <u>Hellstrom v. United States Department of Veterans Affairs</u>, 201 F.3d 94 (2d Cir. 2000), a wholly inapt case.  There, the Second Circuit reversed a grant of summary judgment not on the ground that plaintiff was denied a chance to conduct depositions but on the ground that plaintiff "was denied the opportunity to conduct discovery of any sort." <u>Id.</u> at 97.  Here, Plaintiffs have already received much discovery and will receive still more through this opinion and order.  Unlike the plaintiff in <u>Hellstrom</u>, Plaintiffs will have access to all materials necessary to resist the motion for summary judgment.

a general matter, courts are more sensitive to the burdens of discovery when they would be placed on third parties. See In re Fosamax Prods. Liab. Litig., No. 06-MD-1789, 2009 U.S. Dist. LEXIS 70246, at *34 (S.D.N.Y. Aug. 4, 2009) (Keenan, J.) (explaining that third parties are entitled to more "sympathy" since "they have no personal stake in the litigation"). Here, Plaintiffs wish to conduct what amounts to a fishing expedition into Arthur D. Little's files. The Court can see no reason to permit this in light of the substantial burden it would impose and the low likelihood that it would yield documents beneficial to Plaintiffs beyond those they already have from prior discovery and will receive from the discovery permitted herein.

Finally, the Court finds that Plaintiffs' requests for admission pursuant to Rule 36 are unduly burdensome. Plaintiffs have access to documents through earlier Rule 56(f) discovery in this case and the Bano discovery sufficient to prove many of the facts for which they request an admission. The discovery granted herein will enable them to try to establish still more of these facts. Their requests for admission appear to be an attempt to shift the burden of sifting through this discovery onto Defendants. This is not an appropriate use of Rule 36. Cf. Milde v. Hous. Auth. of Greenwich, No. 00 CV 2423, 2006 U.S. Dist. LEXIS 92258, at *30 (D. Conn. Dec. 20, 2006) ("[A] party

cannot put the burden of discovery on the other party by obtaining all factual details by means of requests for admission."). Therefore Plaintiffs requests for admission are denied.

## CONCLUSION

Plaintiffs' motion under Rule 56(f) is granted. Defendants' May 18, 2005, motion to dismiss and/or for summary judgment is stayed until further discovery can be conducted. Nonetheless, for reasons already stated, all of Plaintiffs' discovery requests are denied save for the following: Document Requests Nos. 21-25, 28, and 31-34. Document Requests Nos. 21 and 25 are modified as discussed above. If Defendants make any claims of privilege, they are directed to provide a privilege log in conformity with Fed. R. Civ. P. 26(b)(5). Discovery can commence immediately and will close on December 15, 2009. Magistrate Judge Pitman will handle any disputes.

A conference is set for December 21, 2009, at 10 a.m. to discuss the briefing schedule for the motion for summary judgment.

SO ORDERED.

Dated:   New York, New York
         September 22, 2009

                                    _John F. Keenan_
                                JOHN F. KEENAN
                        United States District Judge

23