```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
JANKI BAI SAHU, et al.,        :
                               :
           Plaintiffs,         :
                               :
    -against-                  :     No. 04 Civ. 8825 (JFK)
                               :        Opinion & Order
UNION CARBIDE CORPORATION,     :
et al.,                        :
                               :
           Defendants.         :
------------------------------X
```

APPEARANCES:

    For Plaintiffs:
        Richard S. Lewis, Esq.
        Reena Gambhir, Esq.
        HAUSFELD LLP

        Matthew K. Handley, Esq.
        COHEN, MILSTEIN, SELLERS & TOLL, PLLC

        Himanshu Rajan Sharma, Esq.
        SHARMA & DEYOUNG LLP

        Richard L. Herz, Esq.
        EARTH RIGHTS INTERNATIONAL

        Curtis V. Trinko, Esq.
        Law Office of Curtis V. Trinko, LLP

    For Defendants:
        William A. Krohley, Esq.
        William C. Heck, Esq.
        KELLEY DRYE & WARREN LLP

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Plaintiffs' Objections to Magistrate Judge Pitman's July 23, 2010 Order denying their motion to compel. For the reasons that follow, Plaintiffs' objections are

overruled, and the Court affirms Magistrate Judge Pitman's ruling in its entirety.

## I. Background

Familiarity with the facts and extensive procedural history of this case is presumed.  See Sahu v. Union Carbide Corp., 418 F. Supp. 2d 407 (S.D.N.Y. 2005); Sahu v. Union Carbide Corp., No. 04 Civ. 8825, 2006 WL 3377577 (S.D.N.Y. Nov. 20, 2006), rev'd, 548 F.3d 59 (2d Cir. 2008); Sahu v. Union Carbide Corp., 262 F.R.D. 308 (S.D.N.Y. 2009) (granting limited Rule 56(f) discovery); Sahu v. Union Carbide Corp., No. 04 Civ. 8825, 2010 WL 909074 (S.D.N.Y. Mar. 15, 2010) (denying cross motions for reconsideration of September 22, 2009 Order granting limited Rule 56(f) discovery).  Briefly, Plaintiffs seek recovery for injuries allegedly caused by exposure to soil and water polluted with hazardous wastes produced by the Union Carbide India Limited ("UCIL") plant in Bhopal, India.  Plaintiffs seek to hold Union Carbide Corporation ("UCC," together with its former CEO Warren Anderson, "Defendants"), which was UCIL's parent company until 1994, liable for their injuries because:  (1) Defendants were direct participants and joint tortfeasors in the activities that resulted in the pollution; (2) Defendants worked in concert with UCIL to cause, exacerbate, or conceal the pollution; and (3) UCIL acted as UCC's alter ego.

2

To oppose summary judgment on those theories of liability, Plaintiffs served a number of Rule 56(f) discovery requests on Defendants, including two which are the subject of the instant dispute. Request Number 33 seeks "Documents referring or relating to the Foreign Collaboration Agreement regarding the Bhopal plant," and Request Number 34 seeks "All documents concerning the technology transfer agreement, if any, between UCC and UCIL." In its September 22, 2009 Order, the Court held that Requests 33 and 34 were germane to the issue of whether UCC transferred inadequate technology to UCIL. Sahu, 262 F.R.D. at 313-14. The Court subsequently denied Defendants' motion to reconsider its finding with respect to these two requests. Sahu, 2010 WL 909074, at *5 ("Plaintiffs supported Document Request Nos. 33 and 34 with evidence which indicates that UCC transferred technology, know-how, and technical support to UCIL. The nature of the alleged technology transfer and the extent to which process designs were used at Bhopal are exactly the factual disputes for which additional discovery is required.").

In response to Requests 33 and 34, Defendants assert that they produced over 9,000 pages of documents. (Pl. Ex. 2, April 28, 2010 Letter from William C. Heck). Defendants clarified that there is no single "Foreign Collaboration Agreement" between UCC and UCIL; instead, Defendants produced a Design Transfer Agreement and a Technical Service Agreement UCC and

3

UCIL executed in 1973.  Defendants also produced documents related to the Design Transfer Agreement.  However, Defendants did not produce four categories of documents:  (1) drafts and preliminary documents which were superseded by the final agreements that were produced; (2) documents not provided to UCIL; (3) documents related to the Technical Service Agreement to the extent they do not concern design-related services UCC provided to UCIL; and (4) documents about UCIL's Batch Sevin Carbamoylation Unit.  (Id.).  In a hearing on July 22, 2010, Magistrate Judge Pitman denied Plaintiffs' letter motion to compel production of the remaining four categories of documents, primarily relying on defense counsel's representation that any documents in those categories that related to environmental pollution had already been produced.  Magistrate Judge Pitman held that "with respect to documents in those categories that don't relate to pollution issues I think they're either entirely irrelevant or their relevance is so attenuated that their production is not warranted."  (Pl. Ex. 6, July 22, 2010 Tr. at 52:22-25).  To substantiate this finding, defense counsel submitted an affidavit confirming that

> Defendants made diligent and extensive searches in [predecessor case Bano v. Union Carbide Corp.] for documents related to environmental or pollution issues in connection with the former plant of Union Carbide Indian Limited ("UCIL") located in Bhopal, India. When defendants searched for documents to produce in this action, they also looked for any additional

4

>     documents related to environmental or pollution issues
>     in connection with the UCIL Bhopal plant.  The
>     documents searched included, but were not limited to,
>     documents in the following four categories . . . : (1)
>     draft and preliminary documents; (2) documents not
>     provided to UCIL; (3) non-design-related services; and
>     (4) documents related to UCIL's Batch Sevin
>     Carbamoylation Unit.  The documents that related to
>     such environmental or pollution issues that were
>     located were produced.

(William C. Heck Aff. at ¶ 4).  On July 23, 2010, Magistrate Judge Pitman entered an order formalizing his oral ruling.

## II. Discussion

A District Court reviewing a Magistrate Judge's non-dispositive discovery order must modify or set aside any part of the order only if it is "clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); see Catskill Dev., L.L.C. v. Park Place Entm't Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002).  "An order is clearly erroneous if the reviewing court is left with the definite and firm conviction that a mistake has been committed.  An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."  MacNamara v. City of New York, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (internal citations and quotations omitted). This is a highly deferential standard, and "[t]he party seeking to overturn a magistrate judge's decision thus carries a heavy burden."  U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc., No. 04 Civ. 6189, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13,

5

2007); see Nikkal Indus., Ltd. v. Salton, Inc., 689 F. Supp. 187, 189 (S.D.N.Y. 1988) ("Consistently, it has been held that a magistrate's report resolving a discovery discourse between litigants should be afforded substantial deference and be overturned only if found to be an abuse of discretion.").

Plaintiffs' primary objection is that the July 23, 2010 Order is contrary to law because Magistrate Judge Pitman failed to consider the relevance of the challenged documents to agency and concerted action theories of liability.  Plaintiffs additionally argue that Magistrate Judge Pitman erred by: (1) contradicting this Court's September 22, 2009 Order; (2) authorizing an attorney without scientific expertise to certify the completeness of document production; and (3) contradicting his own findings.

### A.   Contrary to Law

Plaintiffs claim that Magistrate Judge Pitman's July 23, 2010 Order is contrary to law because unproduced documents may not implicate pollution or environmental concerns, but they may show the extent to which UCC controlled, reviewed, and approved the technology design used by UCIL; those documents could support Plaintiffs' opposition to summary judgment on agency and concerted action theories of liability.

The issue of UCC's control over UCIL is primarily relevant to Plaintiffs' veil piercing claim, but the September 22, 2009

6

Order specifically denied requests for veil piercing documents as "either duplicative of past discovery or unnecessary to withstand Defendants' narrow summary judgment argument." Sahu, 262 F.R.D. at 314. The Court will not condone an attempt to obtain excluded documents under the guise of an alternate theory of liability. Control is an expansive concept; a document concerning UCC's involvement in any aspect of UCIL's business could theoretically demonstrate control, but the Court has already indicated its unwillingness to allow such broad discovery into UCC and UCIL's business relationship. Plaintiffs are correct, however, that the Court did not intend to foreclose all discovery on agency and concerted action theories of liability simply because documents may also be relevant to the veil piercing claim.[1] Therefore, this Court must determine whether evidence of UCC's control impacts on Plaintiffs' non-veil piercing theories of liability, and, if so, whether the unproduced documents would have specific relevance to the issues on summary judgment.

With respect to the agency theory, control is an essential element of an agency relationship. As Judge Haight explained, "[i]t is one thing to 'consult' with, or obtain

---

[1] To that end, the Court granted Plaintiffs' Requests 21 and 25 so that they could explore the relationship between UCC and UCIL with respect to ownership and control of the Bhopal plant. Sahu, 262 F.R.D. at 314, 317.

7

'recommendations' or approval from a parent corporation.  It is quite another for the parent's approval to be <u>required</u> before the subsidiary can act." <u>Maung Ng We v. Merrill Lynch & Co., Inc.</u>, No. 99 Civ. 9687, 2000 WL 1159835, at *7 (S.D.N.Y. Aug. 15, 2000).  Thus, "[t]he essence of control in an agency sense is in the <u>necessity</u> of the consent of the principal on a given matter." <u>Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.</u>, 476 F. Supp. 2d 414, 422 (S.D.N.Y. 2007).

There is no contention that draft foreign collaboration documents are relevant to the question of whether UCIL needed UCC's permission to act; indeed, as Magistrate Judge Pitman found, only the final versions of the two agreements would define the scope of UCC's control.  Nor is it clear how internal UCC documents not provided to UCIL could empower UCIL to act on UCC's behalf.  As to the Technical Service Agreement non-design documents, the agreement itself specified that UCC would provide certain training and plant start-up services "upon the request of UCIL." (Pl. Ex. 3-4, Technical Service Agreement § 2.2, 2.3, 2.4).  Documents confirming that UCC provided those services to UCIL, if they exist, would show the <u>principal's</u> limited power to act (only upon request), not the agent's.  Finally, with respect to the Batch Sevin Carbamoylation Unit, Plaintiffs argue that there could be documents in which UCIL informed UCC about changes to the Sevin manufacturing process, such that UCC would

8

be aware of any inadequacies therein.  If anything, this line of argument indicates that UCIL could act first and inform UCC about its decisions later, which is antithetical to the type of control required in an agency relationship.  Moreover, a parent corporation's mere awareness of a subsidiary's actions does not establish the level of control required to form a principal-agent relationship.  Therefore, none of the categories of unproduced documents would permit a jury to draw an inference of agency liability.

With respect to concerted action liability, the Complaint alleges that "Union Carbide conspired with and/or worked in concert with UCIL to cause, exacerbate and/or conceal the pollution problem in Bhopal."  (Compl. ¶ 60) (emphasis added).  Under either a conspiracy or aiding and abetting theory of concerted action, "the defendant must know of the wrongful nature of the primary actor's conduct."  Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998).  Control may not be an explicit element of concerted action liability, but evidence of control could bear on UCC's knowledge of UCIL's allegedly polluting operations.  The issue at bar is whether UCC acted in concert with UCIL to cause soil and water contamination – thus, by virtue of the Plaintiffs' own pleadings, in order to be relevant to concerted action liability, documents must address environmental problems or pollution.  Documents revealing UCC's

9

general knowledge of UCIL's operations are simply too attenuated to establish that UCC worked in concert with UCIL to "to cause, exacerbate and/or conceal the pollution problem in Bhopal." For example, as the parties discussed at the July 22, 2010 hearing, if UCC was aware of a deficiency in UCIL's Batch Sevin Carbamoylation Unit concerning the horsepower of the plant's motors, those documents would not allow a jury to infer that UCC acted in concert with UCIL to cause environmental pollution in Bhopal. To the extent challenged documents exist to show that UCC was aware of the subsidiary's environmental misconduct, those documents would be relevant, and they have already been produced. See Heck Aff. at ¶ 4. As none of the four categories of challenged documents are relevant to agency, conspiracy, or aiding and abetting theories of liability, Magistrate Judge Pitman's July 23, 2010 Order is not contrary to law.

### B.   Clear Error

**1.   The September 2009 and July 2010 Orders are Consistent**

As Plaintiffs point out, this Court granted Requests 33 and 34 "without qualification," which is to say that the Court did not whittle down the requests because they were overly broad. However, granting discovery requests "without qualification" does not override Rule 26(b)(1) of the Federal Rules of Civil Procedure. Moreover, the September 22, 2009 Order granted Requests 33 and 34 as germane to "the question of whether UCC

10

transferred inadequate technology to UCIL." Sahu, 262 F.R.D. at 313. Thus, Plaintiffs are entitled to receive documents concerning foreign collaboration and technology transfer between UCC and UCIL that are nonprivileged and relevant to UCC's provision of technology to UCIL. This Court must consider whether Magistrate Judge Pitman's determination that none of the four categories of unproduced documents are relevant to UCC's direct or joint liability premised on technology transfer is clearly erroneous.

        **a.**    **Draft Documents and Documents Not Provided to UCIL**

Plaintiffs argue that draft or preliminary documents may contain information not available in the final versions of the agreements ultimately produced. Similarly, Plaintiffs contend that internal UCC documents not provided to UCIL could reflect UCC's private concerns about the adequacy of technology used at the Bhopal plant. However, to be germane, any internal concerns or technological provisions omitted from the final agreements must pertain to environmental issues. It is certainly possible that draft or internal documents could reflect, for example, workplace safety issues related to the plant's technology, but those concerns would not assist Plaintiffs in establishing UCC's liability for the pollution at issue. On the other hand, a draft agreement could have provided for better waste stream technology than what was ultimately provided; documents such as

11

these would be relevant to environmental matters and have been produced. See Pl. Ex. 6, July 22, 2010 Tr. at 19:13-23 (noting that UCC produced "a preliminary evaluation of the waste disposal problems for the proposed Sevin unit" at Bhopal, a revised version of that document, and a follow-up document). Magistrate Judge Pitman's finding that draft or preliminary documents and documents not sent to UCIL are irrelevant to the extent they do not relate to pollution is not clearly erroneous.

### b.  Non-Design Documents

Under the Technical Service Agreement, at UCIL's request, UCC agreed to provide "training and instructions for technical personnel of UCIL" (Pl. Ex. 3-4, Technical Service Agreement § 2.2)[2] and other services related to the commissioning and start-up of the Bhopal plant, such as:  technical specialists for project implementation (Id. § 2.3); research, development, and/or engineering assistance (Id. § 2.4); and the details of significant product improvements UCC may develop (Id. § 2.5). Plaintiffs' motion to compel sought production of documents concerning these training and other start-up commitments UCC may have undertaken pursuant to the Technical Service Agreement.

---

[2] To the extent Plaintiffs are attempting to distinguish documents about "training" from documents about "instructions," this Court agrees with Magistrate Judge Pitman's finding that those topics are, for all intents and purposes, the same.

It bears repeating that the Court granted Requests 33 and 34 because they might uncover documents germane to "the question of whether UCC transferred inadequate technology to UCIL." Sahu, 262 F.R.D. at 313. As Magistrate Judge Pitman recognized, this Court does not consider services in the nature of training to constitute technology transfer because Plaintiffs' Request 10 (calling for "Documents referring or relating to technical, environmental, or safety training provided by UCC to UCIL") was previously denied as not relevant to any issue on summary judgment. Id. at 314. The same is true for other start-up services. Despite its name, the Technical Service Agreement called for UCC to assist UCIL with matters that are, at best, tangentially related to the actual technology transferred. In essence, Plaintiffs' current request is indistinguishable from Request 49 for "Documents reflecting or relating to services provided by Union Carbide, Union Carbide Eastern or Union Carbide Agricultural to UCIL and/or the Bhopal plant" which the Court also denied. Id. This Court agrees with Magistrate Judge Pitman that documents concerning non-design services provided under the Technical Service Agreement are not relevant to the issues on summary judgment.

   **c. Batch Sevin Carbamoylation Unit Documents**

Although Magistrate Judge Pitman considered this category of unproduced documents from the standpoint of relevance to

Plaintiffs' claims, it may be more appropriate to start with the question of responsiveness to the document request itself. Request 34 asks for documents concerning the technology transfer agreement between UCC and UCIL. In the Design Transfer Agreement, as far as the Court can discern, UCC promised to sell UCIL Design Packages to enable UCIL to produce pesticides such as Sevin. This was a one-way agreement, with information and technology flowing from UCC to UCIL. However, it appears that UCIL may have ultimately developed its own "batch" manufacturing process for the Sevin pesticide instead of using UCC's continuous manufacturing process. To the extent UCIL's Sevin manufacturing process was homegrown, by definition, documents about UCIL's Batch Sevin Carbamoylation Unit have nothing to do with the Design Transfer Agreement or any technology transfer between UCC and UCIL.

Plaintiffs again argue that the requested documents could show that UCC reviewed and approved the process UCIL ultimately developed for itself. As previously discussed, to the extent UCC approved or was otherwise aware of some technological improvement related to environmental matters, those documents would be responsive and have already been produced.

## 2. The Attorney Certification Was Proper

Plaintiffs argue that since Mr. Heck does not have scientific or technical expertise, he did not have the requisite

14

personal knowledge to certify that all documents concerning pollution or environmental matters were in fact produced. Plaintiffs have been on notice for years that document review in Bano and in this case was conducted, as is the common practice, by attorneys.  To the extent Plaintiffs believe additional review by a technical expert is necessary, they should have raised the issue before this late stage of discovery.  Moreover, the Court is not convinced that technical review is required; the Court credits Mr. Heck's representation that documents concerning environmental issues would be obvious to the trained attorneys who reviewed UCC's documents.  For example, one of the issues in this case is waste disposal at the Bhopal plant.  A document discussing waste streams at Bhopal would be easily recognized as responsive.  The Court has previously noted that it "finds no reason to doubt Defendants' repeated representations that the Bano discovery was thorough and complete – representations that Magistrate Judge Pitman endorsed," Sahu, 262 F.R.D. at 316, and that sentiment remains true.  Magistrate Judge Pitman did not err by relying on Mr. Heck's sworn statement that any documents in the four disputed categories that concerned environmental pollution had been produced.

### 3. The Magistrate Did Not Contradict His Own Findings

At the July 22, 2010 hearing, Plaintiffs argued that documents concerning the Design Transfer Agreement or the Technical Service Agreement that did not explicitly address environmental pollution could nonetheless be relevant to the extent of UCC's control over UCIL. Magistrate Judge Pitman considered this argument, but ultimately concluded that, since UCC and UCIL memorialized their relationship in contracts, the documents that would be most relevant to the issue of control are the agreements themselves. Plaintiffs challenged this conclusion by pointing out that even though the final agreements may have granted UCC certain control over UCIL, Defendants could potentially argue that UCC never exercised those powers; therefore, Plaintiffs need documents, even if those documents do not concern pollution, to show the true extent of UCC's participation in UCIL's business affairs. Plaintiffs now argue that, having "recognized" that the final Design Transfer Agreement and Technical Service Agreement may not adequately reveal the relationship between UCC and UCIL, Magistrate Judge Pitman should have either granted the motion to compel or entered an order forbidding Defendants from arguing that UCC did not exercise the authority provided to it in the agreements. By failing to so act, Plaintiffs contend that the Magistrate contradicted his own findings.

To begin, the only finding Magistrate Judge Pitman put on the record is that the requested documents were not relevant to the issues on summary judgment. There are points in the transcript where Magistrate Judge Pitman appears to find some merit in Plaintiffs' arguments, but those comments in no way constitute a final ruling, nor do they indicate self-contradiction. See U2 Home Entm't, 2007 WL 2327068, at *2 ("The fact that [the Magistrate Judge] at first may have leaned toward ruling in the defendants' favor does not weigh in favor of reversing [the Magistrate's] decision but rather shows that [the Magistrate Judge] gave the issue due consideration before making a final ruling.").

Moreover, Magistrate Judge Pitman was not required by law to take either of Plaintiffs' proposed courses of action. As discussed, evidence that could show UCC's control of UCIL outside the scope of environmental matters is not germane to the issues on summary judgment, so the Magistrate's denial of the motion to compel was proper. Moreover, the Magistrate recognized the tension that would arise if Defendants opposed the discovery motion on the grounds that only the agreements define the scope of UCC's control over UCIL but then later argued on summary judgment that the terms of the agreements are irrelevant because UCC did not exercise any control over UCIL, at which point Plaintiffs would need the very documents

17

Defendants refused to provide in order to demonstrate the true extent of UCC's control. Having foreseen possible problems that could arise in the future and having discussed them with both parties, Magistrate Judge Pitman reasonably determined that the record alone would be sufficient to prevent Defendants from taking these contradictory positions; there was no need to prospectively ban Defendants from making an argument that, at this point, is purely hypothetical.

### III. Conclusion

Plaintiffs' objections to Magistrate Judge Pitman's July 23, 2010 are overruled.

**SO ORDERED.**

Dated:    New York, New York
             September 30, 2010

                                        John F. Keenan
                                   **United States District Judge**