```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
JANKI BAI SAHU, et al.,        :
                               :
            Plaintiffs,        :
                               :
   -against-                   :   No. 04 Civ. 8825 (JFK)
                               :   Memorandum Opinion & Order
UNION CARBIDE CORPORATION,     :
et al.,                        :
                               :
            Defendants.        :
------------------------------X
```

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Plaintiffs' motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure to stay the time for opposing Defendants' motion for summary judgment so that they may embark on yet a third round of discovery. For the reasons that follow, the motion is denied.

## I.  Background

Plaintiffs allege that they were injured by exposure to soil and water polluted with hazardous wastes produced by the former Union Carbide India Limited ("UCIL") plant in Bhopal, India. Plaintiffs seek recovery from Union Carbide Corporation ("UCC," together with its former CEO Warren Anderson, "Defendants"). UCC was UCIL's parent company until 1994, and Plaintiffs seek to hold UCC liable under various theories, including: (1) Defendants were direct participants and joint tortfeasors in the activities that resulted in the pollution;

1

(2) Defendants worked in concert with UCIL to cause, exacerbate, or conceal the pollution; and (3) UCIL acted as UCC's alter ego.

Prior to filing the complaint in the case at bar, Plaintiffs had the benefit of discovery produced in the predecessor case Bano v. Union Carbide Corp., No. 99 Civ. 11329 (JFK), generally involving waste disposal and environmental pollution at the Bhopal plant.  In lieu of answering the complaint, Defendants filed a motion to dismiss and/or for summary judgment.  In an Opinion and Order dated December 1, 2005, this Court converted the motion to dismiss to a motion for summary judgment and granted the motion as to all theories of liability except what has heretofore been described as the corporate veil-piercing claim.  See Sahu v. Union Carbide Corp., 418 F. Supp. 2d 407, 416 (S.D.N.Y. 2005).  In the end, the Court allowed Plaintiffs five months to undertake additional discovery on the veil-piercing claim related to Eveready Industries India Limited (as UCIL is presently known) "and its corporate relationship to UCIL and UCC."  Id.  The Court subsequently granted Defendants' motion for summary judgment on the veil-piercing claim.  Sahu v. Union Carbide Corp., No. 04 Civ. 8825, 2006 WL 3377577, at *11 (S.D.N.Y. Nov. 20, 2006).  After the Court of Appeals reversed this Court's decision to convert Defendants' motion to dismiss to a motion for summary judgment and dismiss the case, Sahu v. Union Carbide Corp., 548 F.3d 59,

2

70 (2d Cir. 2008), Plaintiffs moved for a stay and an opportunity to conduct additional discovery to oppose summary judgment.  In a September 22, 2009 Memorandum Opinion and Order, the Court granted the stay in order to permit <u>limited</u> additional Rule 56 discovery.  <u>Sahu v. Union Carbide Corp.</u>, 262 F.R.D. 308, 318 (S.D.N.Y. 2009).  The Court denied many of Plaintiffs' document requests as either not germane to the issues to be argued on summary judgment or cumulative of Rule 56 discovery Plaintiffs previously received in this case and in <u>Bano</u>.  <u>Id.</u> at 314-17.  The Court also denied Plaintiffs' requests to take certain depositions as unduly burdensome.  <u>Id.</u> at 317.

Now, after five years, countless disputes, and two prior opportunities to take Rule 56 discovery, Plaintiffs move yet again to stay the time for their opposition to the renewed summary judgment motion so that they can pursue additional discovery pursuant to Rule 56(d).  Plaintiffs argue that documents produced in the second round of Rule 56 discovery indicate that certain UCC entities, including the Worldwide Agricultural Products Team ("WAPT"), the Union Carbide Agricultural Products Company ("APC"), the Agricultural Products Division ("APD"), and Union Carbide Eastern ("UCE") exercised plenary control over UCIL; Plaintiffs maintain that additional discovery regarding these four groups will assist "in clarifying that there is a genuine issue of material fact on several

3

elements of Plaintiffs' theories of liability," specifically joint tortfeasor, conspiracy, aiding and abetting, and direct participation.  (Pl. Reply at 2).

## II.   Discussion

A party seeking discovery under Rule 56(d)[1] of the Federal Rules of Civil Procedure must file an affidavit explaining "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."  Hudson River Sloop Clearwater, Inc. v. Dep't of Navy, 891 F.2d 414, 422 (2d Cir. 1989); see Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994).  Plaintiffs submitted the required affidavit, but the facts cited in support of the motion do not warrant the requested relief.

## A.   Document Discovery

In a previous ruling, the Court specifically noted that discovery regarding UCC's control over UCIL was relevant to Plaintiffs' concerted action/non-veil piercing theories of liability to the extent that the documents address environmental problems or pollution.  Sahu v. Union Carbide Corp., No. 04 Civ. 8825, 2010 WL 3959611, at *4 (S.D.N.Y. Sept. 30, 2010)

---

[1] The Court uses the Federal Rules of Civil Procedure as amended December 1, 2010.

(affirming Magistrate Judge's ruling that control documents must pertain to environmental matters).  Plaintiffs now contend that they have received documents indicating that UCC, acting through the WAPT, APC, APD, and UCE, exerted plenary control over UCIL. Therefore, Plaintiffs claim that they need documents regarding the relationship between these groups and UCIL regardless of any connection to environmental issues to fully explain the extent of control in the parent-subsidiary relationship.

Plaintiffs have requested most, if not all, of the documents at issue in the instant motion on two prior occasions. In a December 21, 2005 request for documents relating to corporate veil-piercing, Plaintiffs propounded numerous requests for documents describing the relationship between UCC, APD, UCE, and UCIL.  See, e.g., Heck Aff., Ex. 3 at ¶¶ 2-13, 74 (requesting organizational charts, internal guidelines, statement of business principles, and documents regarding the chain of command).  In a February 9, 2009 request for additional documents regarding corporate veil-piercing, Plaintiffs made nearly identical requests for documents concerning UCC, APD, and UCE's relationship to UCIL.  See, e.g., Heck Aff., Ex. 4 at ¶¶ 36-39, 49, 54-55.  Both times, the Court denied these requests as beyond the scope of the narrow veil-piercing issue raised on summary judgment – that is, the financial viability of Eveready Industries India Limited.  See Sahu, 262 F.R.D. at 314; Sahu v.

5

Union Carbide Corp., No. 04 Civ. 8825, 2006 WL 59554, at *1 (S.D.N.Y. Jan. 9, 2006).  Plaintiffs' new claim that these documents will raise an issue of fact on their non-veil piercing theories of liability is particularly dubious considering that they have spent the past five years unsuccessfully requesting these documents solely on the topic of corporate veil-piercing.

    Equally unpersuasive is Plaintiffs' argument that they are entitled to discovery without reference to environmental problems or pollution because UCC exercised a plenary right of control over UCIL's operations at Bhopal.  The documents submitted to the Court contain occasional references to the WAPT approving a strategic plan for the Bhopal plant, and Plaintiffs extrapolate from this approval process UCC's "plenary" control over all of UCIL's business operations at Bhopal.  In other words, Plaintiffs contend that UCC had plenary control over UCIL's strategic plan, so UCC must have controlled decisions relating to environmental safety even if the documents do not say so explicitly.  Assuming for the moment that UCC did have plenary control over the Bhopal strategic plan, no reasonable interpretation of these documents supports such an inferential leap.  To begin with, nothing about the need for approval of a strategic plan indicates that UCC controlled every step UCIL took at Bhopal to implement that strategy.  Nor is it at all clear that a "business strategy" encompasses issues like waste

6

disposal or the technology that allegedly caused the pollution at issue in this case. The documents Plaintiffs submitted primarily concern the Bhopal Task Force's consideration of financial and business goals – there are no references whatsoever to pollution or environmental concerns. However, environmental safety and waste disposal were not trifling issues at Bhopal, and the parties in the past have submitted voluminous documents devoted solely to those topics. It is simply not reasonable to infer that the strategic planning documents' silence on the issue of UCC's participation in environmental safety decision-making at Bhopal really indicates the parent's plenary control. Therefore, Plaintiffs have not established that additional discovery regarding the WAPT, APD, APC, and UCE will demonstrate a genuine issue of material fact as to whether UCC and UCIL acted in concert to cause environmental pollution at Bhopal.

   Moreover, it is questionable whether the documents cited truly support Plaintiffs' theory of plenary control. If indeed UCC had such plenary control, there would be no need for the extensive back-and-forth that the documents submitted by Plaintiffs bring to light. Instead, the documents reflect active negotiations between a parent and subsidiary struggling to define a strategic plan for a Bhopal plant faced with problems such as high materials costs, Government-imposed

7

licensing restrictions, and competition in the Indian pesticide market.  For example, whereas UCC/APC believed that "production of Sevin [pesticide] in India with imported naphthol is in the best interest of UCIL, APC and UCC," in an August 13, 1981 telex, UCIL employee Moorthy challenged APC's conclusion, corrected some of APC's assumptions, and argued that naphthol should be manufactured locally at Bhopal.  (Handley Aff., Ex. E).  In another exhibit, an APC representative sent a telex to UCIL requesting financial data to assist a study team in developing the strategic plan for Bhopal, noting that UCC's "information base [about UCIL's financials] is essentially zero."  (Id., Ex. J).  It is somewhat surprising that a parent company which allegedly held such tight control over its subsidiary lacked basic information such as UCIL's "1981 annual business plan and current long range plan through 1990," historical financial data, "total investment at Bhopal broken down by major unit," "estimated cost for startup of naphthol unit," and "1980 actual and 1981 year to date production of Sevin, MIC, and Temix."  (Id.).  The Court has reviewed Plaintiffs' submissions and finds no "tantalizing references" to plenary control such that the Court is compelled to deviate from its previous position that Plaintiffs are entitled to control documents only to the extent they relate to environmental problems or pollution.

## B.   Rule 30(b)(6) Depositions

Plaintiffs additionally request leave to take Rule 30(b)(6) depositions of UCC to: (1) explain and authenticate documents produced in prior rounds of Rule 56 discovery; and (2) inquire about information received in an interview Plaintiffs' counsel conducted with former UCIL employee Ranjit Dutta.

The Court has previously held that:

> [G]iven the needs of the case, all of Plaintiffs' proposed depositions are unduly burdensome. This is particularly so since the depositions would require Defendants to prepare witnesses to respond to questions regarding events that took place between fifteen and thirty-five years ago. Not only would this be difficult and costly, but the benefit to the Plaintiffs would likely be extremely low: no witness can be expected to provide accurate and detailed accounts of events so far in the past. Furthermore, . . . the Court is granting Plaintiffs limited document discovery - this discovery is a more convenient, less costly, and less burdensome alternative to the depositions.

Sahu, 262 F.R.D. at 317.  That ruling stands.

No party has ever questioned the authenticity of any documents produced to date.  Furthermore, Plaintiffs specifically identify only one document requiring explanation – namely, whether the designation "Work Orders (UCIL)" on a 1974 Safety Considerations Report is UCC's or UCIL's work order number.  (See Heck Aff., Ex. 9).  Thus, Plaintiffs' need for authentication and explanation is minor at best and cannot justify the heavy burden and expense of Rule 30(b)(6)

9

depositions.  Plaintiffs also claim that a Rule 30(b)(6) deposition would clarify the roles of WAPT, APC, APD, and UCE and their relationship with UCIL.  This is nothing more than a roundabout attempt to obtain information sought in document requests the Court has already denied.

Nor is the Court persuaded that issues raised in an informal, unsworn interview Plaintiffs' counsel conducted with Mr. Dutta at his home in Bhopal earlier this year warrant a Rule 30(b)(6) deposition.  It must be noted that Mr. Dutta informed counsel at the very beginning of the interview:  "See, I have got dementia.  I don't even remember my grandson's name now, so telling me to recall something from 26 years ago . . . out of [the] question."  (Handley Aff., Ex. Q at 4:9-12).  The Court does not think it a productive use of time or money to prepare for a deposition of an unidentified person based on "new" information of questionable reliability, relating to decades-old subjects.  That deponent, whoever it is, is likely to have difficulty recollecting things and events from the last millennium as did Mr. Dutta.

### III.     Conclusion

Plaintiffs' motion for additional Rule 56(d) discovery and Rule 30(b)(6) depositions is denied.

**SO ORDERED.**

Dated:    New York, New York
          December 20, 2010

*/s/ John F. Keenan*
John F. Keenan
United States District Judge